# Schulte Roth&Zabel LLP

1152 Fifteenth Street, NW, Suite 850
Washington, DC 20005
202.729.7470
202.730.4520 fax

www.srz.com

Howard Schiffman
202.729.7461

Writer's E-mail Address
Howard.Schiffman@srz.com

September 2, 2015

**VIA ECF**

The Honorable Madeline Cox Arleo
United States District Court for the District of New Jersey
Martin Luther King, Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, NJ  07101

Re: *Securities and Exchange Commission v. Dubovoy, et al.,*
No. 2:15-cv-06076-MCA-MAH

Dear Judge Arleo:

I write on behalf of my client, Exante Ltd. ("Exante"), in connection with a dispute between Exante and Plaintiff concerning whether trades can be made in Exante's frozen account at its United States securities clearing broker, Lek Securities Corporation ("Lek"), in connection with the August 10, 2015 *ex parte* Temporary Restraining Order ("TRO") in the above-captioned proceeding.

Exante believes that its customers who have assets in the frozen Lek account should be permitted to continue trading, which Plaintiff's counsel initially told Lek was permitted under the TRO and which Lek accordingly has permitted since the TRO was issued.[1] Exante has submitted extensive evidence to the Court and to Plaintiff showing that the assets in the frozen Lek account belong to Exante's customers, not Exante, and that the trades in that account were not proprietary trades by Exante, but instead were executed for and at the direction of its customers.  Exante has agreed that, to preserve the assets in the Lek account, there will be no withdrawals of assets pending the Court's ruling on Plaintiff's motion for a preliminary injunction.  Exante respectfully submits, however, that freezing trading by Exante's customers is neither appropriate nor necessary, and is contrary to the goal of the TRO.  Today's markets are extraordinarily volatile, and the frozen Lek account contains significant open short options

---

[1] Counsel for Exante have spoken with Samuel F. Lek, Lek's Chief Executive Officer, who confirmed that, the day Lek was served with the TRO, he specifically asked and was told by Lynn O'Connor on behalf of Plaintiff that Exante was permitted to continue placing trades in its accounts at Lek.

DOC ID - 23514389.3

The Honorable Madeline Cox Arleo
September 2, 2015
Page 2

positions that must be hedged continuously to prevent potential losses.  Similarly, forcing a liquidation of positions in the Lek account in a volatile and depressed market would likely result in unnecessary losses and reduce the value of the frozen account, contrary to the very purpose of the TRO.

Allowing trading to continue at Lek also is consistent with the treatment of Exante's frozen accounts at other clearing brokers that have been discussed with the Court.  The Lek account is identically situated to Exante's frozen account at its other United States clearing broker, R.J. O'Brien & Associates ("RJO"), and is similar to Exante's account at its United Kingdom clearing broker, Otkritie Capital International Limited ("OSL").  Both of those accounts were discussed during the August 28, 2015 telephonic conference with the Court, because Exante had learned prior to the conference that Plaintiff had sent correspondence to RJO and OSL indicating that trading should not be permitted in those accounts.  During the August 28 telephonic conference, Plaintiff's counsel advised that Plaintiff did not object to trading in the RJO and OSL accounts, and agreed to submit a proposed order concerning the RJO account and to provide written confirmation to OSL stating that Plaintiff does not object to trading in those accounts.  Immediately following the telephonic conference, Plaintiff's counsel John Donnelly sent an email to RJO confirming that "Exante may trade in the account but the assets shall not leave the account."  (*See* August 28, 2015 email from Mr. Donnelly to Melissa Andrews at RJO, a copy of which is attached as Exhibit A.)  On August 31, 2015, Plaintiff's counsel filed a Stipulation and [Proposed] Amended Temporary Restraining Order Freezing Assets as to Defendant Exante Ltd., which concerns the RJO account and expressly provides that "Exante will be permitted to execute trades in that account."  (*See* ECF No. 46 at 2.)  There is no reason to treat the Lek account differently.

Exante learned of Plaintiff's current position concerning the frozen Lek account on September 1, 2015, after Plaintiff's counsel sent an email to Lek stating that Exante is not permitted to enter trade orders in the Lek account.[2]  That email indicates that the Commission previously told Lek that trading was permitted, but states "we double-checked the court transcript form [sic] the hearing.  The Judge froze this account entirely and Exante is **not** permitted to trade in this account.  Exante is permitted to trade in other accounts, but not this account.  My apologies for the misinformation."  (*See* September 1, 2015 email from Lynn H. O'Connor to Andrew Shapiro, a copy of which is enclosed as Exhibit B.)[3]  After learning of Plaintiff's September 1 email, counsel for Exante immediately contacted Plaintiff's counsel and

---

[2] Mr. Lek informed counsel for Exante that, when Plaintiff's counsel told him on September 1 that trading was not permitted, he specifically asked Plaintiff to seek clarification from the Court due to his concern that Exante's account may suffer significant losses if open options positions could not be hedged, and that Lek could be exposed to liability to Exante and/or Exante's customers as a result of prohibiting trading.  Mr. Lek's concerns are particularly appropriate given that Plaintiff here, unlike a private litigant, is not required post a bond for losses that the TRO may cause Exante's counterparties, customers, or Exante itself to suffer.  Plaintiff's counsel rejected Mr. Lek's request for clarification.

[3] To the extent counsel's reference to the "transcript" was intended to refer to either the August 24, 2015 hearing or August 28, 2015 telephonic conference with Exante's counsel, I do not believe the record supports counsel's assertion, as I do not recall any discussion regarding whether Exante was permitted to continue executing trades on behalf of its customers in the frozen Lek account.

The Honorable Madeline Cox Arleo
September 2, 2015
Page 3

objected to Plaintiff's position, noting that the Lek account should not be treated differently than the RJO and OSL accounts, and that Exante's customers should be permitted to continue to open and close positions given the volatility in the marketplace, as Lek had permitted Exante to do since the TRO was issued. Plaintiff's response – that the Lek account is different because (some) trades identified in the Complaint were placed through that account – is a non-sequitur. Just like the RJO and OSL accounts, the assets in the frozen Lek account are the assets of Exante's customers, who have open positions in a volatile market and who should be permitted to continue managing those positions to preserve the value of their accounts. Allowing trading to continue is consistent with the TRO and its goals, and should be permitted for the same reasons as it is in the frozen RJO and OSL accounts.

      Exante respectfully requests that the Court schedule a conference as soon as practicable to resolve this dispute. We look forward to speaking with Your Honor about this matter.

Sincerely,

*Howard Schiffman*

Howard Schiffman

cc: John Donnelly, Esq. *(via email)*
    Lynn O'Connor, Esq. *(via email)*
    Kelly L. Gibson, Esq. *(via email)*