# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

        v.

ARKADIY DUBOVOY, et al.

        Defendants.

Civil Action No.: 15-cv-06076
(MCA-MAH)

**MEMORANDUM OF LAW IN SUPPORT OF AMARYAN DEFENDANTS'
MOTION TO MODIFY THE COURT'S OCTOBER 16, 2015 ORDER
FREEZING ASSETS**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
John W. Moscow
Marc D. Powers
Sammi Malek
Margaret E. Hirce

*Attorneys for Defendants David
Amaryan, Ocean Prime Inc., Intertrade
Pacific SA, Copperstone Capital and
Copperstone Alpha Fund*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

THE FACTS ........................................................................................................5

      A.    The Management Of The Alpha Fund By Copperstone Capital ...................................................................................5

      B.    The Operations Of Copperstone Capital....................................6

ARGUMENT ......................................................................................................9

    I.    THE ASSET FREEZE NEEDS TO BE MODIFIED TO ALLEVIATE THE HARM TO THE AMARYAN DEFENDANTS .................................................................9

      A.    The Legal Standard For Modifying An Asset Freeze.................9

      B.    The Court Should Allow Trading In The Alpha Fund .............12

      C.    The Court Should Limit The Asset Freeze To Four Months .......................................................................................13

      D.    The Asset Freeze Should Be Modified To Allow Payment Of Operating Costs And Attorneys' Fees.................15

    II.    THE COURT SHOULD ORDER A FOUR MONTH CONTROL DATE FOR TRIAL........................................................16

CONCLUSION ..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*SEC v. Dowdell*,
175 F. Supp. 2d 850 (W.D. Va. 2001).........................................................10, 16

*SEC. v. Dubovoy*,
2015 WL 6122261 (D.N.J. Oct. 16, 2015) ...............................................5, 12, 13

*SEC v. Duclaud Gonzalez de Castilla*,
170 F. Supp. 2d 427 (S.D.N.Y. 2001) ...............................................................15

*SEC v. Healthsouth Corp.*,
261 F. Supp. 2d 1298 (N.D. Ala. 2003)..............................................................14

*SEC v. Manor Nursing Ctrs., Inc.*,
458 F.2d 1082 (2d Cir. 1972) ............................................................................10

*SEC v. McGinnis*,
2013 WL 6500268 (D. Conn. Dec. 11, 2013) ............................................10, 11

*SEC v. Smith*,
2011 WL 9528138 (N.D.N.Y. Feb. 1, 2011)......................................................10

*SEC v. Unifund SAL*,
910 F.2d 1028 (2d Cir. 1990) ..............................................................10, 14, 18

**Rules**

Fed. R. Civ. P. 59(e).................................................................................................1

Fed. R. Civ. P. 65 ....................................................................................................1

## PRELIMINARY STATEMENT

The Amaryan Defendants[1] respectfully request that this Court, pursuant to Fed. R. Civ. P. 59(e) and 65, modify the Asset Freeze entered on October 16, 2015 (the "Asset Freeze"). Although the Asset Freeze is designed to maintain the status quo by continuing to freeze eleven of the Amaryan Defendants' accounts, in fact it does a lot more and is harmful to the interests of both the Commission and the Defendants. The Asset Freeze's collateral consequences (which the Court may not have intended) are inflicting substantial harm on the Amaryan Defendants and innocent third parties, including Alpha Fund investors and Copperstone Capital employees. The Defendants respectfully request that the Court, in its equitable discretion, (1) modify the Asset Freeze to permit trading in the Alpha Fund, (2) limit the amount frozen to $10 million in the Copperstone Capital accounts, (3) carve out funds for operating expenses, and (4) limit the duration of the Asset Freeze.[2]

*First*, the Amaryan Defendants request that the Court modify the Asset Freeze to permit trading in the Alpha Fund without allowing the withdrawal or

---

[1]  The Amaryan Defendants are David Amaryan, Intertrade Pacific SA ("Intertrade"), Ocean Prime Inc. ("Ocean Prime"), Copperstone Capital, and the Copperstone Alpha Fund (the "Alpha Fund").

[2]  The Amaryan Defendants have sought the SEC's consent to a modification of the Asset Freeze to address these harms. The SEC has thus far declined to agree to any of the proposed modifications requested by this motion.

redemption of any funds, except as otherwise permitted by the Court. Currently, Copperstone Capital's inability to execute trades in the Alpha Fund leaves its investors, whose assets make up over 75% of the assets in the fund, exposed to market volatility and potential adverse effects. The Asset Freeze has effectively barred the Alpha Fund managers from fulfilling their fiduciary duties by responding timely and adequately to market driving events. This serves no legitimate purpose. Allowing usual and customary trading in the Alpha Fund to protect the portfolio and preserve assets is wholly consistent with the interests of the SEC, the Court, and the Amaryan Defendants.[3]

*Second*, the Amaryan Defendants ask this Court to reduce the amount of frozen assets to $10 million in the Copperstone Capital accounts. Currently approximately $27 million in funds are frozen, yet the SEC only claims illicit profits by Copperstone and the Alpha Fund of $4.4 million (*see* Am. Compl. ¶¶ 33, 34, 102), with total claims against the Amaryan Defendants at $8.1 million. An Asset Freeze limited to $10 million would still cover disgorgement and interest, thereby protecting the interests of the SEC if it were to prevail at trial. It would also permit the companies to stay in business.

_____

[3] We note that the Court has permitted other Foreign Trader Defendants similar kinds of relief from freeze orders in this case. Additionally, we note that the settlements the SEC has reached with the other defendants to date (Suprananok, Dkt. No. 90 and Jaspen, Dkt. No. 91) have only sought disgorgement of the amount of the alleged ill-gotten gain and no civil penalties.

*Third*, modifying the Asset Freeze to allow payment of operating expenses and legal fees would be both just and equitable. The investment management operations of the company are severely hampered and will effectively be shut down without the Court's grant of the requested relief. Only one-third—or six of the twenty Copperstone Capital employees—are currently being paid. Most are on unpaid leave and three are working without salary. Moreover, Mr. Amaryan's other businesses are being affected by the Asset Freeze. The frozen Ocean Prime account functions as the main operating account for several of those other businesses, which rely upon that account for daily operations. With that account blocked, the other businesses are being crippled. This is neither the purpose nor an equitable consequence of a preliminary Asset Freeze.

*Fourth*, the Amaryan Defendants request that the Court modify the duration of the Asset Freeze to no more than four months from the date of issuance, October 16 subject to extension if necessary to complete the trial, or February 15, 2016. The Amaryan Defendants will be seeking expedited discovery and a quick trial from Magistrate Judge Michael A. Hammer at the initial scheduling conference scheduled for November 19, 2015. Mindful of the effect of the Asset Freeze on their businesses, the Amaryan Defendants have urged and continue to urge the Commission to travel to Russia to look through the books and records of Copperstone Capital. The Defendants have offered to facilitate the Commission's

entry into Russia and any other matter which the Commission will reasonably request. The Amaryan Defendants seek a March 2016 trial to resolve this matter; absent a control date for expiration or reevaluation of the freeze, the case may drag on while the Amaryan Defendants' businesses languish. The Amaryan Defendants maintain that they did not engage in insider trading, and they seek to prove this to both the Court and the SEC. Indeed, as their Motion to Dismiss demonstrates, the SEC has not even alleged a prima facie case against the Amaryan Defendants for violations of securities laws. But a victory in this or an appellate court two years from now would be pyrrhic, given the catastrophic financial and reputational harm that will have occurred by then.

Defendants believe these proposed modifications to the Asset Freeze are just and reasonable. The modified Asset Freeze will still serve the dual purpose of ensuring there are sufficient assets to satisfy a potential future SEC judgment—in the event one is obtained—as well as alleviating the substantial harm that has resulted from the Asset Freeze. Permitting the use of funds to pay reasonable expenses. which are being submitted to the Court and the Commission, will permit the companies to stay open and retain their staff. Accordingly, it is respectfully requested that an amended Asset Freeze issue as soon as possible.

## THE FACTS

On October 16, 2015, the Court issued an Asset Freeze on the proof presented by the SEC in its court filings and at the evidentiary hearing.[4] *See SEC. v. Dubovoy*, 2015 WL 6122261 (D.N.J. Oct. 16, 2015) ("Opinion"). The Amaryan Defendants now come before this Court to seek what they believe to be reasonable modifications for the Court's consideration including detailed information concerning the operations of Copperstone Capital. Modification of the Asset Freeze is requested to allow the investment manager of the Alpha Fund to continue in business. In total, Defendants seek $194,700 monthly for employee salaries, $300,000 for year-end bonuses, $78,100 for ordinary and necessary operation expenses for the Moscow and London offices, and $100,000 monthly for legal fees to continue to defend themselves in this action.

### A.    The Management Of The Alpha Fund By Copperstone Capital

The Asset Freeze has significantly affected the daily business operations of Copperstone Capital. It has affected its cash flow, restricted its receipt of monthly fees from the Alpha Fund, to which it is entitled, and caused reputational damage. Under its investment management agreement ("Advisory Agreement") with Alpha Fund, Copperstone Capital receives a management fee of around $40,000-$45,000

---

[4] The amount of money belonging to clients that David Amaryan manages—$300 million when he applied to business school—is, respectfully, irrelevant. It does not belong to Amaryan nor may he spend it. It does not belong to Copperstone, nor may it spend it.

per month on the approximately $25 million in assets under management at the Alpha Fund. (Declaration of David Amaryan in Support of the Motion to Modify ("Amaryan Decl. in Support") ¶ 5.) In addition, Copperstone Capital is entitled to a quarterly performance fee if it surpasses its "high water" mark. (*Id.*) However, the manager may soon fail unless the Asset Freeze is modified to allow Copperstone Capital to be paid its monthly management fees from Alpha Fund, prospectively during the pendency of this lawsuit and retroactively since August 2015, and Copperstone Capital is allowed to use its frozen funds to pay its employees and other operating expenses.

In addition, under the indemnity provisions of the Advisory Agreement, Copperstone Capital is entitled to be reimbursed for the legal fees and costs associated with this proceeding. A copy of the Advisory Agreement is attached to the Declaration of David Amaryan in Support of the Motion to Modify as Ex. A. That Declaration discusses the indemnity and management fees between the parties. (Amaryan Decl. in Support, ¶¶ 8-9.) Accordingly, Copperstone Capital seeks prospective advancement of its legal fees of $100,000 per month, and retroactive indemnity from August 2015.

### B.    The Operations Of Copperstone Capital

There are twenty officers and employees in the Moscow and London offices of Copperstone Capital whose livelihood has been affected by the Asset Freeze.

(Amaryan Decl. in Support ¶ 15.) The total monthly compensation for these employees, inclusive of taxes, is $194,700. (*Id.*) The names and compensation of each employee of Copperstone Capital are discussed in the Declaration of David Amaryan in Support of the Motion to Modify at ¶ 15. Three of those employees, David Amaryan, David Papazian, and Vardan Amaryan, have been working for Copperstone Capital without salary since August 2015. (*Id.* at ¶ 17.) As a direct result of the Asset Freeze, Copperstone Capital can only afford to pay six employees and the rest have been placed on leave of absence. (*Id.*)

The Asset Freeze has also affected the ability of the Amaryan Defendants to pay ordinary and necessary business expenses in order to maintain their operations. The usual monthly operating costs for Copperstone Capital's Moscow office, which are detailed in the Declaration of David Amaryan in Support of the Motion to Modify, total $42,700. (Amaryan Decl. in Support ¶ 18.) The usual monthly operating costs for Copperstone Capital's London office are $15,000. (*Id.* at ¶ 19.)

Additionally, market data and other trading communications systems are an important and necessary expense of Copperstone Capital to serve the Alpha Fund. It also must maintain these expenses to service its other advisory clients, none of whom have been charged with any wrongdoing. As set forth in previous submissions to this Court, the skilled team of traders and analysts at Copperstone Capital utilize multiple resources to follow the market and develop trading

strategies. These monthly resources and the related costs, as detailed in the Declaration of David Amaryan in Support of the Motion to Modify, total $20,400. (Amaryan Decl. in Support ¶ 20.)

The SEC has frozen the accounts of the Alpha Fund, but in fact, the majority of the assets in the Alpha Fund belong to other investors, unrelated to Mr. Amaryan or his brother. There are currently ten investors in the Alpha Fund. (Amaryan Decl. in Support ¶ 12.) Through Amabro Investments Limited and TDV, Vardan Amaryan owns approximately 23% percent of the capital in the Alpha Fund.[5] None of the other investors, nor their beneficial owners, have been named as defendants in this action. (*Id*. at 11.)

In addition to the above, the Asset Freeze has already had unanticipated and unfair collateral consequences for the Amaryan Defendants. For example, other financial institutions that house Amaryan Defendants' accounts not subject to this Court's Asset Freeze, have recently refused to do business with Copperstone Capital or Mr. Amaryan. They have effectively frozen all activities in these *other* accounts belonging to *other* clients.

Since the Asset Freeze, the Amaryan Defendants have had to carefully manage Copperstone Capital and Mr. Amaryan's other non-securities businesses,

---

[5] David Amaryan previously owned 50% of Amabro Investment Limited, but he has since divested himself of said interest.

unsure of future developments.[6] Consequently, Mr. Amaryan has to reconsider certain critical expenses. For example, if the Asset Freeze is not modified, the Amaryan Defendants will need to terminate three of their four Bloomberg terminals on January 1, 2016. (Amaryan Decl. in Support ¶ 24.) In December, the Amaryan Defendants will need to cease using the Reuters news software. Thus, the freeze is forcing Mr. Amaryan to eliminate resources important for the functioning of his business and the development of trading strategies, which had kept his fund at the fore of Russian investment funds. Therefore, in the event this Court does not reduce the amounts frozen in the Alpha Fund and Ocean Prime accounts, the Amaryan Defendants request that they still be permitted to withdraw $372,800 per month, prospectively as set forth above pursuant to their indemnity and investment management fees, and otherwise, and similar monies retroactively, from the frozen accounts to pay their operating expenses and legal fees.

## ARGUMENT

I.   **THE ASSET FREEZE NEEDS TO BE MODIFIED TO ALLEVIATE THE HARM TO THE AMARYAN DEFENDANTS**

### A.    The Legal Standard For Modifying An Asset Freeze

The purpose of an Asset Freeze is to "assure[] that any funds that may become due can be collected" to the extent that the SEC establishes a securities

---

[6] Mr. Amaryan owns an online fragrance business, a construction company, and real estate. Counter parties to those businesses are now refusing to honor or do business with him or these other businesses. (Amaryan Decl. in Support ¶ 25.)

violation at trial. *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990) (modifying Asset Freeze). Where equity requires, district courts have discretion to modify an Asset Freeze order. *See, e.g.*, *McGinnis*, 2013 WL 6500268, at *6 (releasing funds for monthly living expenses and consideration of attorney's fees); *SEC v. Dowdell*, 175 F. Supp. 2d 850, 854 (W.D. Va. 2001) ("If the court has the authority to freeze personal assets temporarily, it logically has the corollary authority to release frozen personal assets, or lower the amount frozen.").

While recognizing that maintaining the "status quo" allows the SEC to obtain disgorgement if successful at trial, courts emphasize that "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972); *McGinnis*, 2013 WL 6500268, at *6 (modifying Asset Freeze and noting "the court balances the equities in ruling on this preliminary injunction and considers the extreme burden that the Asset Freeze places on the defendants and their families"). Indeed, as is the case here, "[f]reezing assets under certain circumstances [] might thwart the goal of compensating investors if the freeze were to cause such disruption of defendants' business affairs that they would be financially destroyed." *Manor Nursing*, 458 F.2d at 1106; *see, e.g., SEC v. Smith*, 2011 WL 9528138, at *4 (N.D.N.Y. Feb. 1, 2011) (modifying asset freeze to permit sale of property to "halt diminishment of

its value and to realize the greatest possible return"). Surely the Court would not want such a result.

Here, the equities weigh in favor of the relief requested because of the substantial harm to the Amaryan Defendants. The proposed modifications would protect the dual purpose of preserving the status quo and permitting the Amaryan Defendants to continue their businesses. Allowing trading in the Alpha Fund while restricting withdrawals preserves the Funds' assets. Neither the SEC's nor the Amaryan Defendants' interests are served by allowing the Fund's assets to dissipate due to lack of active trading. Nor is any interest served by effectively forcing Copperstone Capital, Ocean Prime, Intertrade and other non-party Amaryan businesses to shut down and/or go into bankruptcy. Imposing the equivalent of the ultimate punishment on these defendants without trial is inappropriate.

Moreover, it is worth noting Mr. Amaryan and the other Amaryan Defendants, unlike many other foreign Defendants in this case, have been forthcoming in submitting to this Court's jurisdiction. Mr. Amaryan has no intention to dissipate his assets, or those he and/or Copperstone Capital manage involving the Alpha Fund. *See, e.g., SEC v. McGinnis*, 2013 WL 6500268, *6 (D. Conn. Dec. 11, 2013) (where court modified freeze order, defendants noted that they were cooperative and "lack[ed the] intent to dissipate [their] assets"). To the

extent that Mr. Amaryan's residence abroad "raises a serious concern that he may transfer corporate funds beyond the Court's jurisdiction and dissipate the assets available for any eventual award," Opinion, at *9, modifying the Asset Freeze as requested herein will still provide more than sufficient assets to satisfy a judgment in this case.

### B.    The Court Should Allow Trading In The Alpha Fund

The accounts that are subject to the Asset Freeze are not bank accounts containing cash; they are brokerage accounts containing securities whose value fluctuates with the movements in the market. A blanket freeze has the effect of depleting the funds because the Amaryan Defendants are not allowed to effectively manage this money as fiduciaries for the Alpha Fund in response to market volatility and change. The market is constantly changing, and money managers must be able to react to news and other market indicators in order to preserve the value of these accounts. Thus, the Asset Freeze should be modified to permit securities and other customary trading in the frozen accounts, while prohibiting withdrawals or redemptions except as otherwise permitted by the Court.

Moreover, the amounts frozen in the accounts should be modified. As noted earlier, the amount frozen in the eleven accounts exceeds significantly the amounts claimed in illicit profits. The Copperstone Capital and Alpha Fund has over $25 million frozen while the alleged illicit profits are $4.4 million. The amount frozen

in the Ocean Prime account is $1.28 million,[7] yet those funds are vital to the continuing business operations of Mr. Amaryan. Thus, nearly $27 million is frozen in these accounts, while claimed illicit trading profits (even disregarding losing trades, which Defendants do not concede is proper) is $8.1 million.[8] Reducing the amount frozen to $10 million, which would be inclusive of disgorgement and interest were the SEC to prevail, is proper. Thus, $16 million, at least, from these accounts should be unfrozen.

## C.    The Court Should Limit The Asset Freeze To Four Months

In light of the sweeping nature of the Asset Freeze, the Amaryan Defendants respectfully submit that the Court's October 16, 2015 Order Freezing Assets and this modified asset freeze order shall be no longer than four months, or February 15, 2016. The purpose of an Asset Freeze is to maintain the status quo, and "courts

---

[7] Though frozen, the Intertrade accounts do not contain any funds.

[8] Determining the exact amount of alleged illicit gains at issue continues to be a moving target for the Amaryan Defendants. However, potentially instructive in determining the amount alleged, at the Asset Freeze hearing, the SEC relied on expert testimony to show that the "Amaryan Defendant accounts" "generated $4.5M in net profits trading in questioned events" for the period ending February 2014. Opinion, at *5.

The SEC also presented evidence of $8 million in "questioned trades," which included 2015 trading alleged "upon information and belief," but not specifically against the Amaryan Defendants. (*See* Am. Compl. ¶ 10.) The Amaryan Defendants maintain that the only "questioned trades" relevant at this time are the trades alleged with specificity to be made by them. However, even using the expanded data through August 2015 and $8 million in purportedly illicit gains, the freeze is well beyond reason.

generally frown upon Asset Freezes of unlimited duration." *SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1325 (N.D. Ala. 2003) (dissolving asset freeze), citing *Unifund*, 910 F.2d at 1042-43. In *Unifund*, the court acknowledged that the SEC may obtain an Asset Freeze to "preserve its opportunity to collect funds that may yet be ordered disgorged," but nonetheless modified the Asset Freeze order. 910 F.2d at 1042-1043. The court limited the duration of the order to 30 days, holding that it did "not believe that the Commission [was] entitled to keep even the modified order in force for whatever period of time the Commission may take to prepare for trial," and stated that "it should not be entitled to interfere with the appellants' unrestricted use of their accounts for more than a brief interval." *Id*.

The Amaryan Defendants submit that the circumstances here militate in favor of modification. The SEC's investigation is ongoing (Transcript of October 8, 2015 Hearing at 35:16-25) and given the number of defendants in the case, it is unclear when the SEC will be ready for a trial on the merits. Indeed, the SEC has repeatedly stated that it is still gathering evidence. (*Id.* at 35:21-23; 36:19-24; 64:12 – 65:16.) In the meantime, the Asset Freeze is wreaking havoc on the lives and businesses of the Amaryan Defendants, their employees, and investors. That the SEC chose to bring this action before its investigation was complete was its prerogative. This Court should allow the SEC a reasonable time to prepare its case for trial. However, it should not be an indefinite period of time. Thus, the Asset

Freeze should be modified to include a reasonable temporal restriction of four months, as a control date for an anticipated trial by next March 2016. Amaryan Defendants separately will seek expedited discovery before Magistrate Judge Hammer at the initial scheduling conference.

### D.    The Asset Freeze Should Be Modified To Allow Payment Of Operating Costs And Attorneys' Fees

As previously noted, Ocean Prime functions as an operating company through which Mr. Amaryan processes and pays the operating expenses of his other companies, including Copperstone Capital. Currently, fourteen out of the twenty people regularly employed by Copperstone Capital are on an unpaid leave of absence because there is no money to pay them. (Amaryan Decl. in Support ¶ 17.) Their expertise and services are required for Copperstone Capital to manage the individual accounts of other clients not part of the Alpha Fund. Copperstone Capital is also currently unable to meet many of its basic business obligations, such as paying rent or utilities on time, or performing under certain of its contracts. Accordingly, the Asset Freeze should be modified to permit the payment of operating expenses in the amount of $272,800 per month that come due in the ordinary course of business.

Additionally, the Amaryan Defendants request that the Court modify the Asset Freeze further to carve out a monthly allowance for the payment of attorneys' fees. *See, e.g.*, *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d

427 (S.D.N.Y. 2001) (granting request for attorney's fees). In *SEC v. Dowdell*, an enforcement action involving an alleged Ponzi scheme, the court granted defendants' request to release certain assets for living expenses and attorney's fees. 175 F. Supp. 2d at 854. The court noted that the "central concern" in considering whether to modify the freeze order to pay attorney's fees was "fairness of the proceedings." *Id*. at 856. In granting the request for reasonable estimates of attorney's fees, the court noted that the case involved a "complex legal matter, and lawyers are essential to the presentation of issues related to it." *Id*.

This case, too, is a "complex legal matter" where the SEC has alleged an elaborate insider trading scheme involving tens of defendants and hundreds of trades, with records spanning two continents. Legal assistance is crucial to providing the Amaryan Defendants with a fair and adequate opportunity to present their case to the Court. Accordingly, the Amaryan Defendants request that the Asset Freeze be modified to permit them to pay additional legal fees up to $100,000 per month.

## II.    THE COURT SHOULD ORDER A FOUR MONTH CONTROL DATE FOR TRIAL

As Mr. Amaryan testified during the Asset Freeze evidentiary hearing and through his declarations, he is eager for the opportunity to resolve this case on the merits and to clear his name. Each day that this case remains pending is another day where his businesses and reputation stand to suffer further. He has nothing to

hide, and is prepared to open his books and records to the SEC so it can be satisfied that Amaryan and his companies have done nothing wrong.

Time, however, is of the essence. Protracted discovery—particularly if the Asset Freeze remains in effect during this period—can potentially do much harm to Mr. Amaryan's businesses as to make any ultimate vindication too little too late. For that reason, the Defendants' counsel has requested that the SEC consent to an expedited discovery schedule, but the SEC has thus far refused. As stated in the Declaration of John Moscow, dated November 13, 2015, the SEC also has declined the offer of Mr. Amaryan and his counsel to have the SEC travel to Russia and examine first hand all the books and records of the companies involved.[9] (Moscow Decl. ¶ 6.)

The SEC should not have it both ways. It cannot obtain the extraordinary relief of an Asset Freeze that presently could go on for years while treating this case as an ongoing investigation with no immediate deadlines and no apparent end in sight. To allow this would improperly penalize the innocent and prematurely punish the Defendants who are eager to mount their own defense and to obtain

---

[9] Due to strict Russian data privacy laws, collection and transmission abroad of documents are subject to stringent restrictions. As such, the Amaryan Defendants have proposed to facilitate the SEC's entry into Russia for the purpose of conducting a firsthand review of all relevant records, and have further offered to make available to the SEC all of the Amaryan Defendants' books and records as they are kept in the ordinary course of business.

vindication. The Court, therefore, should set a four month control date for trial, which sets the Asset Freeze to expire in the middle of February 2016, unless the SEC states its "readiness for immediate trial in March 2016." *Unifund*, 910 F.2d at 1043. The Amaryan Defendants plan to simultaneously seek an expedited order from Magistrate Judge Hammer, and severance if the SEC or other parties object.

## <u>CONCLUSION</u>

For the foregoing reasons, the Amaryan Defendants respectfully request that the Court grant their motion to modify the Asset Freeze as requested, together with such other and further relief as the Court deems just and proper.

Dated:  November 13, 2015          Respectfully submitted,
        New York, New York

                                BAKER & HOSTETLER LLP

                         By:  */s/ Margaret E. Hirce*_____
                                Margaret E. Hirce

                                John W. Moscow
                                Marc D. Powers
                                Sammi Malek
                                Margaret E. Hirce
                                45 Rockefeller Plaza
                                New York, New York 10111

                                *Attorneys for Defendants David Amaryan, Intertrade Pacific SA, Ocean Prime Inc., Copperstone Capital and Copperstone Alpha Fund*

18