UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

  v.

ARKADIY DUBOVOY, et al.

       Defendants.

Hon. Madeline Cox Arleo

Civ. No. 15-6076-MCA-MAH

---

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE UNITED STATES FOR LEAVE TO INTERVENE AND FOR A STAY OF DISCOVERY

---

PAUL J. FISHMAN
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Memorandum:
ANDREW S. PAK
DANIEL SHAPIRO
DAVID M. ESKEW
SVETLANA M. EISENBERG
Assistant United States Attorneys

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS/PROCEDURAL HISTORY........................................... 2

ARGUMENT ................................................................................................. 6

I.     THE UNITED STATES ATTORNEY SHOULD BE PERMITTED TO
INTERVENE IN THIS ACTION FOR THE LIMITED PURPOSE OF SEEKING A
STAY OF DISCOVERY. ................................................................................. 6

       A.     The United States Is Entitled to Intervention as of Right in this
       Civil Action.................................................................................. 7

       1. The United States' Motion for Intervention is Timely. ................ 7

       2. The United States Has a Compelling Interest in the Civil
       Litigation That is Not Adequately Represented by the Existing
       Parties, and Which May Be Adversely Affected in the Absence of
       Intervention. .......................................................................... 8

       B.     Alternatively, the United States Should be Granted Permissive
       Intervention Because There are Common Questions of Law and
       Fact Between this Civil Action and the Pending Criminal Cases. . 10

II.    A STAY OF CIVIL DISCOVERY IS NECESSARY TO PROTECT THE
INTEGRITY OF THE ONGOING CRIMINAL INVESTIGATION AND
PROSECUTION. ......................................................................................... 11

       A.     The Criminal and Civil Matters Overlap. .................................... 12

       B.     The Public Interest Is in Favor of a Stay..................................... 12

       C.     The Public's Interest in Allowing the Criminal Cases to Be
       Completed Without Interference Outweighs the Minimal Prejudice
       to Defendants From a Stay. ....................................................... 15

       D.     A Stay Would Likely Narrow the Issues in the Civil Case............. 16

CONCLUSION ............................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

<u>Board of Governors of the Federal Reserve Sys. v. Pharaon</u>, 140 F.R.D. 634 (S.D.N.Y. 1991) ..................................................................................... 10

<u>Brock v. Tolkow</u>, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ........................... 16

<u>Campbell v. Eastland</u>, 307 F.2d 478 (5th Cir. 1962) ........................ 13, 14

<u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 441 U.S. 211 (1979)............. 15

<u>First Merchants Enterprise, Inc. v. Shannon</u>, No. 88 Civ. 8254 (CSH), 1989 WL 25214 (S.D.N.Y. Mar. 16, 1989) ..................................................... 10

<u>Founding Church of Scientology v. Kelley</u>, 77 F.R.D. 378 (D.D.C. 1977) . 14

<u>Harris v. Pernsley</u>, 820 F.2d 592 (3d Cir. 1987) ....................................... 7

<u>In re Eisenberg</u>, 654 F.2d 1107 (5th Cir. 1981)....................................... 15

<u>In re Fine Paper Antitrust Litig.</u>, 695 F.2d 494 (3d Cir. 1982) ................... 8

<u>In re Grand Jury Proceedings (Williams)</u>, 995 F.2d 1013 (11th Cir. 1993) ....................................................................................................... 16

<u>In re Ivan F. Boesky Securities Litigation</u>, 128 F.R.D. 47 (S.D.N.Y. 1989) ....................................................................................................... 13

<u>Integrated Generics, Inc. v. Bowen</u>, 678 F. Supp. 1004 (E.D.N.Y. 1988).. 14

<u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322 (9th Cir. 1995)......... 12

<u>Landis v. North American Co.</u>, 299 U.S. 248 (1936)................................. 11

<u>Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.</u>, 72 F.3d 361 (3d Cir. 1995) ................................................................................... 8

<u>Nuesse v. Camp</u>, 385 F.2d 694 (D.C. Cir. 1967)........................................ 9

<u>Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.</u>, 223 F.R.D. 326 (D.N.J. 2004) ........................................................................................... 7

RAD Services, Inc. v. Aetna Casualty & Surety Co., 808 F.2d 271 (3d Cir. 1986) .................................................................................... 11

SEC v. Chestman, 861 F.2d 49 (2d Cir. 1988) ................................... 8, 10

SEC v. Control Metals Corp., 57 F.R.D. 56 (S.D.N.Y. 1972).................... 14

SEC v. Downe, No. 92 Civ 4092 (PKL), 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993)........................................................................................ 13, 15

SEC v. HealthSouth Corp., 261 F. Supp. 2d 1298 (N.D. Ala. 2003) ... 11, 12

SEC v. One or More Unknown Purchasers of Sec. of Global Indus., Civ. No. 11-6500 (RA), 2012 U.S. Dist. LEXIS 162772, (S.D.N.Y. Nov. 9, 2012).. 10

SEC v. Ott, Civ. No. 06-4195 (GEB), 2006 U.S. Dist. LEXIS 86541 (D.N.J. Nov. 29, 2006) ........................................................................ 8, 9, 13

Texaco, Inc. v. Borda, 383 F.2d 607 (3d Cir. 1967) ........................... 12, 16

United States v. GAF Financial Services, 335 F. Supp. 2d 1371 (S.D. Fla. 2004)........................................................................................ 13

United States v. Hugo Key & Son, Inc., 672 F. Supp. 656 (D.R.I. 1987) ....................................................................................... 13, 15

United States v. Kordel, 397 U.S. 1 (1970)........................................... 11

United States v. Mellon Bank, N. A., 545 F.2d 869 (3d Cir. 1976) ..... 11, 13

United States v. Terr. of the V.I., 748 F.3d 514 (3d Cir. 2014).................. 7

Walsh Sec. v. Cristo Prop. Mgmt., 7 F. Supp. 2d 523 (D.N.J. 1998) ........ 12

## **Federal Rules and Statutes**

Fed. R. Civ. P. 24(a)(2) ............................................................... 7

Fed. R. Civ. P. 24(b)(1)(B) ....................................................... 10

Fed. R. Civ. P. 24(b)(3) ........................................................... 10

## PRELIMINARY STATEMENT

The allegations in this civil enforcement action (hereinafter, the "Civil Case") filed by plaintiff United States Securities and Exchange Commission ("SEC") against Arkadiy Dubovoy, Igor Dubovoy, Pavel Dubovoy, Ivan Turchynov ("Turchynov"), Oleksander Ieremenko ("Ieremenko"), Vitaly Korchevsky ("Korchevsky"), Vladislav Khalupsky ("Khalupsky"), Leonid Momotok ("Momotok"), Aleksandr Garkusha ("Garkusha"), and others[1] (collectively, the "Individual Defendants"), as well as against various trading entities[2] (collectively, the "Entity Defendants"), overlap with two active federal criminal cases in which Indictments have been filed (the "Criminal Cases"). One case is pending in this district against a number of the Individual Defendants, namely Turchynov, Ieremenko, Arkadiy Dubovoy, Igor Dubovoy, and Pavel Dubovoy (collectively, the "DNJ Criminal Defendants"), captioned United States v. Ivan Turchynov et al., Crim. No. 15-cr-390 (MCA) (the "DNJ Criminal Indictment"), and the other is pending in the Eastern District of New York against additional Individual Defendants, namely Korchevsky, Khalupsky, Momotok, and Garkusha (collectively, the "EDNY Criminal Defendants"),

---

[1] The following individuals are also named as defendants in the Civil Case: Nelia Dubova, David Amaryan, Alexander Fedoseev, Roman Lavlinskiy, Oleksandr Makarov, Nikolai Slepenkov, Andriy Supranonok, and Maxim Zakharchenko.

[2] The following entities are also named as defendants in the Civil Case: APD Developers, LLC, Beratto Group Ltd., Bering Explorer Fund Ltd., Concorde Bermuda Ltd., Escada Logistics Ltd., Exante Ltd., Global Hedge Capital Group, Guibor S.A.,Intertrade Pacific S.A, Memelland Investments Ltd., Jaspen Capital Partners Limited, NTS Capital Fund, Ocean Prime Inc., Omega 26 Investments Ltd., Southeastern Holding and Investment Company LLC, Copperstone Alpha Fund, and Copperstone Capital.

captioned <u>United States v. Vitaly Korchevsky et al.</u>, Crim. No. 15-cr-381 (RJD) (the "EDNY Criminal Indictment").[3]

Given the substantial overlap between the Civil Case and the Criminal Cases and the Individual Defendants and the Criminal Defendants, and in the interests of judicial economy, among other reasons, the United States of America, through the United States Attorney for the District of New Jersey, moves to (1) intervene in the Civil Case pursuant to Rule 24 of the Federal Rules of Civil Procedure; and (2) stay discovery in the Civil Case.  As set forth in greater detail below, a stay would preserve the integrity of the investigation and prosecution of the Criminal Cases, advance the public interest, prevent the defendants from circumventing the narrow confines of criminal discovery through broad civil requests, and cause no prejudice to the Individual or Entity Defendants.  Arkadiy Dubovoy, Igor Dubovoy, Korchevsky, Momotok, Garkusha, and plaintiff SEC have consented to the United States' intervention and to a stay of civil discovery; the remaining Criminal Defendants are fugitives believed to be currently located in Ukraine.

## STATEMENT OF FACTS/PROCEDURAL HISTORY

On or about August 6, 2015, a federal grand jury sitting in Newark, New Jersey returned the DNJ Criminal Indictment charging the DNJ Criminal Defendants for their involvement in a scheme spanning from in or about February 2010 through in or about August 2015 to steal, through computer

_____

[3] The DNJ Criminal Indictment and the EDNY Criminal Indictment are collectively referred to as the "Criminal Indictments" and the DNJ Criminal Defendants and the EDNY Criminal Defendants are collectively referred to as the "Criminal Defendants."

2

hacking, material nonpublic information in the form of soon-to-be-released draft press releases (the "Stolen Releases") from the computer networks of three press release distribution companies (the "Victim Newswires"), and then execute profitable securities trades based on the material nonpublic information contained in the Stolen Releases prior to their distribution to the investing public.  On or about August 5, 2015, a federal grand jury sitting in Brooklyn, New York returned the EDNY Criminal Indictment charging the EDNY Criminal Defendants for their involvement in the same scheme.

The DNJ Criminal Defendants were each charged with one count of conspiracy to commit wire fraud; seven counts of wire fraud; one count of conspiracy to commit securities fraud; seven counts of securities fraud; and one count of conspiracy to commit money laundering.  Turchynov and Ieremenko were additionally charged with conspiracy to commit fraud in connection with computers and one-count each of aggravated identity theft.  In addition, Turchynov was charged alone with one-count of computer hacking and both Turchynov and Ieremenko were charged together in a separate computer hacking count.  On or about August 11, 2015, law enforcement arrested Arkadiy Dubovoy and Igor Dubovoy.  Law enforcement believes that Turchynov, Ieremenko, and Pavel Dubovoy are fugitives currently located in Ukraine.

The EDNY Criminal Defendants were each charged with one count of conspiracy to commit wire fraud; one count of conspiracy to commit securities fraud; two counts of securities fraud; and one count of conspiracy to commit

money laundering.  On or about August 11, 2015, law enforcement arrested Korchevsky, Momotok, and Garkusha.  Law enforcement believes that Khalupsky is a fugitive currently located in Ukraine.

On or about August 10, 2015, the SEC filed a complaint against the Criminal Defendants and others.  See Complaint, SEC v. Arkadiy Dubovoy et al., Civ. No. 15-cv-6076 (MCA-MAH), Docket No. 1 (hereinafter, the "SEC Complaint").  On or about August 23, 2015, the SEC amended its complaint to include two more entity-defendants.  See SEC v. Arkadiy Dubovoy et al., Civ. No. 15-cv-6076 (MCA-MAH), Docket No. 28 (hereinafter, the "SEC Amended Complaint").

The SEC Amended Complaint, like the Criminal Indictments, alleges that from as early as in or around February 2010 through mid-2015, Turchynov and Ieremenko hacked into the computer networks of three Victim Newswires in order to steal press releases for publicly traded companies before they were issued to the investing public and that these press releases were passed on to traders, including the remaining Criminal Defendants (Arkadiy Dubovoy, Igor Dubovoy, Pavel Dubovoy, Korchevsky, Khalupsky, and Garkusha), who executed profitable securities trades based on the material nonpublic information contained in the Stolen Releases (the "Hacking and Trading Scheme").  Compare, e.g., SEC Amended Complaint ¶¶ 1-10, 21-23, 24-32, and 53-55, with DNJ Criminal Indictment ¶¶ 1-6, 14-16, and 36-38 and EDNY Criminal Indictment ¶¶ 27-53.

In addition to alleging the same overall Hacking and Trading Scheme, the SEC Amended Complaint and the Criminal Indictments specifically highlight many of the same facts.  For example, the SEC Amended Complaint, like the Criminal Indictments, allege Arkadiy Dubovoy, Igor Dubovoy, Pavel Dubovoy, Korchevsky, Khalupsky, Momotok, and Garkusha, collectively traded ahead of the Stolen Releases stolen by the hackers, and that Pavel Dubovoy specifically communicated with hackers or their associates, and directed payments to them.  Compare, SEC Amended Complaint ¶¶ 19-23, 25-32, 78-79, and 86, with DNJ Criminal Indictment ¶¶ 11-13, 66-67, and 72-74 and EDNY Criminal Indictment ¶¶ 27-28, 30, 39-44.

Additionally, the SEC Amended Complaint, like the Criminal Indictments, alleges that the hackers were sometimes paid a percentage of the trading profits, and that the hackers were given access to monitor the traders' brokerage account at times in order to verify the profits made by the traders.  Compare, SEC Amended Complaint ¶¶ 83-85, with DNJ Criminal Indictment ¶¶ 103 & 109 and EDNY Criminal Indictment ¶ 44.

Furthermore, the SEC Amended Complaint and the Criminal Indictments involve the same trades made by the Criminal Defendants in furtherance of the Hacking and Trading Scheme, that is, all trades based on the material nonpublic information found in the Stolen Releases during the same time period.  Each of the SEC Amended Complaint and the Criminal Indictments highlight specific examples of trading activity conducted in furtherance of the overall scheme.  See SEC Amended Complaint ¶ 148-221; DNJ Criminal

Indictment ¶ 80-102; and EDNY Criminal Indictment ¶¶ 39-44.  There is,

however, significant overlap with respect to the trading examples highlighted in

the SEC Amended Complaint and the Criminal Indictments.  <u>Compare</u> SEC

Amended Complaint ¶¶ 149-154 (relating to trading in Caterpillar, Inc. ("CAT")

in October 2011), 169-174 (trading in Acme Packet, Inc. ("ACME") in July

2012), 189-194 (trading in Edwards Lifesciences ("EW") in April 2013), 216-221

(trading in Align Technology, Inc. ("ALGN") in October 2013), <u>with</u> DNJ

Criminal Indictment ¶¶ 81-83 (trading in CAT in October 2011), 87-89 (trading

in ACME in July 2012), 90-92 (trading in EW in April 2013), and 97-99 (trading

in ALGN in October 2013) <u>and</u> **EDNY** Criminal Indictment ¶ 40 (trading in

ALGN in October 2013).

<u>**ARGUMENT**</u>

I.   <u>**THE UNITED STATES ATTORNEY SHOULD BE PERMITTED TO
     INTERVENE IN THIS ACTION FOR THE LIMITED PURPOSE OF
     SEEKING A STAY OF DISCOVERY.**</u>

The United States seeks permission to intervene in the Civil Case for the

limited purpose of staying discovery in this matter to protect the integrity of the

ongoing investigation and prosecution of the Criminal Cases.  Under the

Federal Rules of Civil Procedure, there are two independent bases for

intervention:  intervention as of right pursuant to Rule 24(a) or permissive

intervention pursuant to Rule 24(b).  The United States' intervention in this

Civil Case is supported under both grounds.

6

**A.**   **The United States Is Entitled to Intervention as of Right in this Civil Action.**

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as of

right as follows, in pertinent part:

> On timely motion, the court must permit anyone to intervene
> who . . . claims an interest relating to the property or transaction
> that is the subject of the action, and is so situated that disposing
> of the action may as a practical matter impair or impede the
> movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

"A potential intervenor must satisfy four criteria to succeed on a motion

pursuant to Rule 24(a)(2):  '(1) the application for intervention is timely; (2) the

applicant has a sufficient interest in the litigation; (3) the interest may be

affected or impaired, as a practical matter by the disposition of the action; and

(4) the interest is not adequately represented by an existing party in the

litigation.'"  United States v. Terr. of the V.I., 748 F.3d 514, 519 (3d Cir. 2014)

(quoting Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987) (citation

omitted)).  "Although these requirements are intertwined, each must be met to

intervene as of right."  Harris, 820 F.2d at 596 (citation omitted).  Here, each

requirement is met.

### 1. The United States' Motion for Intervention is Timely.

The determination of whether a motion to intervene is timely is

"determined from all the circumstances and, in the first instance, by the [trial]

court in the exercise of its sound discretion."  Princeton Biochemicals, Inc. v.

Beckman Coulter, Inc., 223 F.R.D. 326, 328 (D.N.J. 2004) (citing In re Fine

Paper Antitrust Litig., 695 F.2d 494, 500 (3d Cir. 1982) (quotations omitted).

Courts in the Third Circuit weigh three factors in determining timeliness: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995).

Here, the Civil Case was initiated just a few months ago, and neither discovery nor motion practice has commenced. The United States' instant motion to intervene is therefore timely and will cause no delay or prejudice to the parties. See id. at 370 (finding no prejudice from a four-year delay in filing intervention motion because, while some written discovery and settlement negotiations had occurred prior to the motion, there were no depositions taken, dispositive motions filed, or decrees entered during the four-year period).

### 2. The United States Has a Compelling Interest in the Civil Litigation That is Not Adequately Represented by the Existing Parties, and Which May Be Adversely Affected in the Absence of Intervention.

The remaining criteria for intervention as of right are also easily met. The United States has a substantial interest in the Civil Case that is not sufficiently represented by the existing parties and that may be harmed in the absence of intervention. Specifically, courts have recognized that "[t]he government ha[s] a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the [parallel] criminal matter." SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (per curiam); see also SEC v. Ott, Civ. No. 06-4195 (GEB), 2006 U.S. Dist. LEXIS 86541, at *6 (D.N.J. Nov. 29, 2006) (Bongiovanni,

U.S.M.J.) (finding that "it [wa]s clear that the United States ha[d] a direct and substantial interest in th[e] [SEC civil] litigation, because the ongoing parallel criminal investigation concern[ed] the same business practices, contracts and payments at issue in th[e] [civil] matter").

That recognized and discernable interest may be affected if the Civil Case is permitted to proceed before the Criminal Cases. All of the Criminal Defendants have been named in the Civil Case, and are, in both proceedings, alleged to have perpetrated the same Hacking and Trading Scheme, involving the same Stolen Releases. Their interests, as well as the remaining defendants in the Civil Case are adverse to those of the United States, as they are willing to seek to discover and publicize matters that are the subject of the ongoing criminal prosecution and any related ongoing criminal grand jury investigation. For example, as set forth in greater detail below, the Criminal Defendants are likely to use the Civil Case to obtain discovery to which they are not entitled in the Criminal Cases. The United States' interests concern safeguarding the criminal investigation and prosecution. See Nuesse v. Camp, 385 F.2d 694, 702-04 (D.C. Cir. 1967). "In addition, the interests of the SEC in enforcing the provisions of the Securities and Exchange Act of 1934, and of Defendants do not represent those of the United States." Ott, 2006 U.S. Dist. LEXIS 86541, at *6 (citation omitted). Based on the foregoing, the United States should be granted leave to intervene as of right pursuant to Fed. R. Civ. P. 24(a).

9

**B.    Alternatively, the United States Should be Granted Permissive Intervention Because There are Common Questions of Law and Fact Between this Civil Action and the Pending Criminal Cases.**

Federal Rule Civil Procedure 24(b)(1)(B) provides an alternative means for intervention – specifically, permissive intervention – where a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  "It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact."  SEC v. Downe, Civ. No. 92-4092 (PKL), 1993 U.S. Dist. LEXIS 753, at *42-43 (S.D.N.Y. Jan. 26, 1993) (citing Chestman, 861 F.2d at 50); Board of Governors of the Federal Reserve Sys. v. Pharaon, 140 F.R.D. 634, 638 (S.D.N.Y. 1991); First Merchants Enterprise, Inc. v. Shannon, No. 88 Civ. 8254 (CSH), 1989 WL 25214 (S.D.N.Y. Mar. 16, 1989); see also SEC v. One or More Unknown Purchasers of Sec. of Global Indus., Civ. No. 11-6500 (RA), 2012 U.S. Dist. LEXIS 162772, at *4 (S.D.N.Y. Nov. 9, 2012).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Here, the Civil Case and the Criminal Cases arise out of common questions of law and fact related to the Criminal Defendants' alleged involvement in the same Hacking and Trading Scheme.  Indeed, the Criminal Defendants are likely to advance the same factual and legal defenses the Civil Case and the Criminal Cases.  Moreover, intervention will not cause undue

delay or prejudice the parties, particularly since the civil discovery process has not gotten underway.  Nor will intervention prejudice the rights of the parties. Indeed, the Criminal Defendants who are not fugitives have no objection to the United States' intervention for the limited purpose of seeking a stay of discovery.  Additionally, if the United States is granted intervention, no civil defendant will be prejudiced, as they will all have the opportunity to respond to the United States' motion to stay civil discovery, either consenting or objecting to the stay.  Accordingly, the Court should exercise its discretion to allow the United States to intervene in this Civil Case for the limited purpose of moving for a stay.

## II.   A STAY OF CIVIL DISCOVERY IS NECESSARY TO PROTECT THE INTEGRITY OF THE ONGOING CRIMINAL INVESTIGATION AND PROSECUTION.

The United States seeks to intervene for the limited, and authorized, purpose of staying discovery in this matter.  Courts have the inherent authority to stay proceedings in a civil case in the interests of justice when a parallel criminal investigation is underway.  See SEC v. HealthSouth Corp., 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003); RAD Services, Inc. v. Aetna Casualty & Surety Co., 808 F.2d 271, 279 n.3 (3d Cir. 1986); United States v. Kordel, 397 U.S. 1, 12 n.27 (1970); Landis v. North American Co., 299 U.S. 248, 254 (1936).  It is "clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings."  United States v. Mellon Bank, N. A., 545 F.2d 869,

872-873 (3d Cir. 1976) (quoting <u>Texaco, Inc. v. Borda</u>, 383 F.2d 607, 609 (3d Cir. 1967)).

Factors that courts have considered in weighing whether a stay is warranted include the extent to which the criminal and civil cases overlap, the interests of the public in the pending civil and criminal litigation, the potential prejudice to the civil parties of delaying their litigation, the interests of the court, and the status of the criminal cases.  See <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322, 324–25 (9th Cir. 1995); <u>HealthSouth</u>, 261 F. Supp. 2d at 1326; <u>Walsh Sec. v. Cristo Prop. Mgmt</u>., 7 F. Supp. 2d 523, 526-27 (D.N.J. 1998).

Here, all the factors that courts typically consider in evaluating whether to stay a civil matter in favor of a criminal proceeding weigh in favor of a stay.

### A. <u>The Criminal and Civil Matters Overlap</u>.

There is significant overlap between the Civil Case and the Criminal Cases because they involve the same Criminal Defendants and the same Hacking and Trading Scheme.  Furthermore, the potential witnesses in the criminal investigation and the civil action are identical.

### B. <u>The Public Interest Is in Favor of a Stay</u>.

A stay of discovery in this matter is in the public's interest where it prevents defendants from utilizing the expansive civil discovery rules to obtain discovery that they otherwise would not be entitled to under the narrow rules of criminal discovery.  As the Third Circuit explained in <u>Mellon Bank</u>, a civil litigant should not be permitted to proceed simultaneously with an overlapping

12

criminal investigation, because "the similarity of the issues left open the possibility that [the target] might improperly exploit civil discovery for the advancement of his criminal case." 545 F.2d at 873. The possibility of improper use of discovery, in part, led the district court in Mellon Bank to stay discovery, id., and the Court of Appeals for the Third Circuit affirmed, id. at 874. The concern expressed in Mellon Bank that criminal discovery limitations not be circumvented has been echoed by many courts that have stayed civil discovery in parallel proceedings.

For example, in Campbell v. Eastland, the Fifth Circuit stated:

> A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed – unstayed. In the proper case the trial judge should use his discretion to narrow the range of discovery.

307 F.2d 478, 487 (5th Cir. 1962) (internal citation omitted).

Courts around the country, including in this very District, have relied on similar logic to stay civil discovery while criminal proceedings are ongoing. See Ott, 2006 U.S. Dist. LEXIS 86541, at *3-10; United States v. GAF Financial Services, 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004) (civil forfeiture stayed pursuant to 18 U.S.C. § 981(g)); Downe, 1993 WL 22126, at *12–14; In re Ivan F. Boesky Securities Litigation, 128 F.R.D. 47, 49-50 (S.D.N.Y. 1989); United States v. Hugo Key & Son, Inc., 672 F. Supp. 656, 657-59 (D.R.I. 1987);

Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 380-81 (D.D.C. 1977); SEC v. Control Metals Corp., 57 F.R.D. 56, 57-58 (S.D.N.Y. 1972).

Notwithstanding the concern that litigants will exploit the liberal civil discovery rules to their advantage, the United States does not have to demonstrate that any particular defendant already has unfairly taken advantage of the civil discovery provisions to the detriment of the United States or the public. Rather, it is presumed that criminal defendants and targets will make full use of such an unsurpassed opportunity to harm the Government's criminal cases. See Integrated Generics, Inc. v. Bowen, 678 F. Supp. 1004, 1009 (E.D.N.Y. 1988) (no need to find wrongful intent). Courts have recognized the unfair advantages inherent in civil discovery opportunities and have, accordingly, stayed discovery. See, e.g., Control Metals Corp., 57 F.R.D. at 57 (staying depositions of four grand jury witnesses).

In the present case, given the overlap of witnesses and issues between the Civil Case and the Criminal Cases, interrogatories and deposition notices in the Civil Case could result in perjury and manufactured evidence. Eastland, 307 F.2d at 487 n.12. Revealing the identity of cooperating witnesses would create the opportunity for intimidation of prospective witnesses and discourage the information sharing by potential witnesses. Id. Even if the defendants here "possessed the purest of motives," allowing civil discovery to go forward would make them "the beneficiar[ies] of materials otherwise unavailable to [the]m under the criminal rules . . . thus nullifying in effect the criminal

14

discovery limitations." In re Eisenberg, 654 F.2d 1107, 1113-14 (5th Cir. 1981).

The Criminal Defendants are not be entitled through civil discovery to obtain transcripts of grand jury testimony.  See Douglas Oil, 441 U.S. at 222-23.  However, the defense could depose witnesses in the Civil Case, ask them if they testified before the grand jury, and, if they did, ask them to repeat their grand jury testimony, thereby subverting the purposes of grand jury secrecy. Civil depositions would be taken with an eye toward developing impeachment material against the Government's criminal trial witnesses, a tool that is normally not available to criminal defendants.  See Downe, 1993 WL 22126, at *13 ("[W]here a party or witness in a civil case is cooperating with a grand jury investigation relating to the subject matter of the civil suit, there is a compelling reason to stay discovery of the civil case pending resolution of the criminal investigation."); Hugo Key, 672 F. Supp. at 658 ("[I]t cannot be doubted that the discovery of the identity of confidential government informants would provide an opportunity for the intimidation of prospective witnesses.  This possible result would not only harm the interests of the United States in the present case, but might also discourage individuals from providing information to the government in the future.").

**C.**   **The Public's Interest in Allowing the Criminal Cases to Be Completed Without Interference Outweighs the Minimal Prejudice to Defendants From a Stay.**

The public's significant interest in allowing the Criminal Cases to run their course must be balanced against the civil litigants' interest in a final

resolution of their case.  All litigants, of course, have an interest in the swift resolution of their claims and defenses.  The United States is mindful that neither the Court, the SEC, nor the defendants want this case to be delayed unnecessarily.  Nonetheless, disposing of the Civil Case expeditiously does not outweigh the importance of conducting an unimpeded criminal investigation and prosecution.  This is especially true where a stay until the completion of the Criminal Cases will cause little to no particularized harm to the public, the SEC, or to the defendants, and where, as here, the interested parties already have consented to the stay.

### D.     <u>A Stay Would Likely Narrow the Issues in the Civil Case</u>.

Finally, allowing the criminal proceedings to go first might well narrow the civil issues.  <u>See</u> <u>In re Grand Jury Proceedings (Williams)</u>, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); <u>Texaco Inc.</u>, 383 F.2d at 609 (Third Circuit affirmed the district court's decision to stay the civil action in part because of its determination that "the trial of the criminal case [might] reduce the scope of discovery in the civil action . . . [a]nd . . . perhaps might also simplify the issues"); <u>Brock v. Tolkow</u>, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[T]he resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues.").  The discovery the parties wish to undertake now will always be possible later, but there might be little left to litigate civilly after a successful criminal prosecution.

## **CONCLUSION**

For the reasons set forth above, the United States respectfully requests leave to intervene in the Civil Case and for a stay of discovery in this action until the conclusion of any criminal trial in the Criminal Cases.

Respectfully submitted,
PAUL J. FISHMAN
United States Attorney


By:   *s/ Andrew S. Pak*
ANDREW S. PAK
DANIEL SHAPIRO
DAVID M. ESKEW
SVETLANA M. EISENBERG
Assistant United States Attorneys

Dated:  Newark, New Jersey
          November 18, 2015

17