UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 15-6076 (MCA) (MAH) |
| Plaintiff, | OPINION |
| v. | |
| ARKADIY DUBOVOY, et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court by way of Plaintiff Securities and Exchange Commission's (the Commission) motion for leave to serve the summons and complaint by alternative means upon Defendants Nikolai Slepenkov and Maxim Zakharchenko pursuant to Federal Rule of Civil Procedure 4(f)(3). Pl.'s Br. in Supp. of Mot. at 2, D.E. 307-1. Specifically, the Commission requests leave to serve Slepenkov and Zakharchenko, both individuals living in the Russian Federation, by email, and to additionally serve Slepenkov through his United States broker. *Id.* Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will grant Plaintiff's motion.

## II. BACKGROUND

On August 10, 2015, the Commission filed this action against Slepenkov, Zakharchenko, individuals living in the Russian Federation, and other defendants, alleging violations of Section

1

17(a) of the Securities Act of 1933 and Sections 10(b), 20(b), and 20(e) of the Securities and Exchange Act of 1934.  Compl. ¶¶ 222 to 234, D.E. 1.  The Commission alleges that from 2010 to 2014, computer hackers residing in Ukraine hacked into newswire services and obtained more than 100,000 unpublished press releases with information pertaining to publically traded companies. Am. Compl. ¶ 72, D.E. 28.  The hackers then sold this information to traders, including Slepenkov and Zakharchenko, in the United States and abroad.  *Id.* at  ¶ 78 to 86.  Slepenkov and Zakharchenko, among others, then used the unpublished information to place illegal securities trades.  *Id.* at ¶ 101 to 107.  The Commission alleges that over the course of this five-year scheme, the traders made over $100 million in illegal profits.  *Id.* at ¶ 1.

On August 10, 2015, along with its Complaint, the Commission also made an ex parte motion for a temporary restraining order to freeze Defendants' brokerage accounts.  Pl.'s Mot. for TRO at 2, D.E. 3.  The Court granted the TRO and authorized the Commission to serve the TRO "by any means reasonably calculated to provide notice, including but not limited to, personal delivery, facsimile, overnight courier, email or first class mail, and service on TRO Defendants' respective brokers." TRO at 7, D.E. 12.  The Commission states that it served the TRO, the TRO motion papers, and Complaint upon Slepenkov and Zakharchenko by UPS, email, and also served Slepenkov through his broker, Interactive Brokers, located in the United States.  Decl. of Julia Green ¶ 2 to 4, D.E. 307-2.   The UPS Shipment sent to Slepenkov was delivered on August 17, 2015, and was signed for by "Slepenkova."  UPS Delivery Confirmation, Exh. 2. to Green Decl., D.E. 307-4.  The UPS shipment sent to Zakharchenko was delivered on August 18, 2015, and was signed for by "Pavlov."  UPS Delivery Confirmation, Exh. 3 to Green Decl., D.E. 307-5.  Additionally, the Commission asserts it emailed Slepenkov at two different email addresses, and Zakharchenko at an email address associated with his business, Bering Explorer Fund, Ltd.  Green

Decl. ¶ 2, 3. D.E. 307-2. Although the Commission did not receive a response from either Slepenkov and Zakharchenko, the Commission claims it "did not receive an automatic reply indicating these email addresses were bad or otherwise inoperative." Pl.'s Br. in Supp. of Mot. at 4, D.E. 307-1. The Commission further asserts that Zakharchenko used the relevant email address on August 17, 2015, and November 2 and 6, 2015, to correspond with thr broker for his business, Bering Explorer Fund Ltd.  Exhs. 5 to 7 to Green Decl, D.E. 307-7 to 9.

The Commission argues in its brief that although it has received no response to its attempts to serve Defendants with the TRO papers, the Commission believes Slepenkov and Zakharchenko are aware of the action. Pl.'s Br. in Supp. of Mot. at 5, D.E. 307-1.  For this proposition, the Commission points to the declaration of David Amaryan, the owner and operator of Copperstone Capital, a defendant in a separate but related action.  Decl. of David Amaryan, D.E. 73. Amaryan alleges that he spoke with Slepenkov, a former employee of Copperstone, regarding the case. *Id.* at ¶ 62.  Similarly, the Commission asserts that Zakharchenko has knowledge of the claim because Zakharchenko has attempted to participate in the case.  Green Decl. ¶ 6 to 9.  On August 25, 2015, an attorney, Ira Lee Sorkin, wrote to the Court stating that he had been contacted by Zakharchenko concerning the case.  Ltr. to Judge Arleo, August 25, 2015, Exh. 8 to Green Decl., D.E. 307-10. Sorkin explained that although he was not authorized to accept service on behalf of Zakharchenko, he wished to be heard by the Court on the issues of proper service and jurisdiction. *Id.*  The Court rejected Sorkin's requests to be heard because he was not authorized to practice before the Court and because he had not been retained as counsel by a party in the case.  Ltr. Order, September 10, 2015, D.E. 63.  Subsequently, Sorkin made no further submissions to the Court.

### III. DISCUSSION

The Commission argues that it should be permitted to serve Slepenkov and Zakharchenko by alternative means of service because both Defendants reside in Russia, a country that refuses to serve process in accordance with the Hague Convention.  Pl.'s Br. in Supp. of Mot. at 2, D.E. 307-1.  Federal Rule of Civil Procedure 4(f) governs service of process upon individuals in foreign countries.  The Rule provides that an individual defendant may be served "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention.[1]"  Fed. R. Civ. Pro. 4(f)(1).  Notwithstanding Rule 4(f)(1), however, Rule 4(f)(3) grants district courts with discretionary authority to direct service "by other means not prohibited by international agreements."  *See Knit With v. Knitting Fever, Inc.,* No. 08-4221, 2010 WL 4977944, at *3 (E.D. Pa. Dec. 7, 2010).  Considering Rule 4(f)(1) and Rule 4(f)(3) together, it follows that if a foreign country has agreed upon means of service in accordance with the Hague Convention, then any other means of service employed by a plaintiff would constitute "means prohibited by international agreement[]."  *See Advanced Aerofoil Technologies, AG v. Todaro*, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) (holding that the Hague Convention's procedures for service were mandatory, because defendants were residing in Switzerland and Germany, two countries which had agreed to service consistent with the Hague Convention); and *Cephalon, Inc. v. Sun Pharm. Indus.,* 2011 WL 6130416 at *2 (D.N.J. Dec. 7, 2011) (determining that service inconsistent with the Hague Convention was insufficient because defendant was located in India, a country which had recently agreed to Hague Convention procedures for service of process).

---

[1] The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Hague Convention") "sets out the means for service of process for foreign defendants in international civil suits." *See Bravetti v. Liu* 2013 WL 6501740 at *3 (D.N.J. Dec. 11, 2013).

Despite Rule 4(f)(1)'s mandate that a plaintiff should effectuate service in accordance with the Hague Convention, Rule 4(f)(3) directs that when there are no internationally agreed means of service, such as those means codified by the Hague Convention or otherwise, alternative service may be permissible, so long as service is ordered by the court and is not prohibited by international agreement. In this case, Russia, despite being a signatory to the Hague Convention, unilaterally suspended all judicial cooperation with the United States in civil and commercial matters in July 2003.[2] Because of this, it is fair to conclude that there are no internationally agreed means of service for those cases in which the defendant being served resides in Russia, and that any attempts to serve process through Hague Convention procedures would most likely be unsuccessful. Based on this logic, federal courts have permitted alternative means of service in cases where it would be "futile" to attempt to comply with Hague Convention approved means of service. *See Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC,* 2013 WL 1644808 at *1 (W.D. Pa. April 16, 2013) (granting plaintiff's motion for alternative service because any attempt to serve defendants in

---

[2] According to the United States Department of State:

> The Russian Federation refuses to serve letters of request from the United States for service of process presented under the terms of the 1965 Hague Service Convention or to execute letters rogatory requesting service of process transmitted via diplomatic channels. The Russian Federation also declines to give consideration to U.S. requests to obtain evidence. While the Department of State is prepared to transmit letters rogatory for service or evidence to Russian authorities via diplomatic channels, in the Department's experience, all such requests are returned unexecuted. Likewise requests sent directly by litigants to the Russian Central Authority under the Hague Service Convention are returned unexecuted

> U.S. Department of State, Russia Judicial Assistance, https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/russia-federation.html. (last visited October 19, 2016).

Russia through the channels of the Hague Convention, would certainly be returned unexecuted); *see also In re Potash,* 667 F.Supp.2d 907, 930 (N.D. Ill. Nov. 3, 2009) (reasoning that serving Russian defendants by alternative means was "particularly appropriate" because Russia has refused to cooperate with Hague Convention procedures) (quoting (Fed.R.Civ.P. 4(f)(1) advisory committee's note (1993 Amendments)); *see also In re LDK Solar Secs. Litig*. 2008 WL 2415186 at *2, (N.D.Cal. June 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority, because China, although a signatory to the Hague Convention, had explicitly objected to means of service authorized by Hague).  We can therefore conclude that serving Slepenkov and Zakharchenko through means agreed upon by the Hague Convention would almost undoubtedly fail, and it is appropriate to authorize service by alternative means.  To do otherwise would essentially thwart the Commission from ever being able to serve Slepenkov and Zarharchenko in this case.

Having determined that alternative means of service is permissible in this case, it is still necessary for the Court to determine whether the Commission's proposed means of alternative service comports with constitutional notions of due process. *See Marlabs Inc. v. Jakher*, 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010).  The United States Supreme Court has explained that the method of service must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "[T]rial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Rio Properties, Inc. v. Rio Intern.*

*Interlink,* 284 F.3d 1007, 1016 (9th Cir. 2002). Furthermore, in certain circumstances, federal courts have authorized service upon a defendant's broker. *See SEC v. Unifund SAL,* 910 F.2d 1028, 1034 (2d Cir. 1990).

However, what qualifies as sufficient service varies depending on each case's particular facts and circumstances. *See Prediction Co. LLC v. Rajgarhia*, 2010 WL 1050307, at *1. (S.D.N.Y March 22, 2010). The Commission's submissions in support of its motion reveal that Zakharchenko used his email address to communicate with his broker at least three times after the TRO materials were served. Exhs. 5 to 7 to Green Decl., D.E. 307-7 to 9. Furthermore, although there is no evidence demonstrating Slepenkov has recently accessed his email accounts, neither email address to which the TRO papers were directed produced automatic replies indicating "a bad or inoperative address." Pl.'s Br. in Supp. or Mot. at 5, D.E. 307-1. Additionally, an attorney wrote to this Court on Zakharchenko's behalf, purporting to have made contact with Zakharchenko in an effort to become involved in the action, and Slepenkov's former employer alleged he spoke with Slepenkov specifically about this case. *Id.* at 5. While the Commission has not produced any evidence directly demonstrating contact between Slepenkov and his broker since the complaint was filed, it is reasonable to expect that Slepenkov would maintain regular contact with his broker, considering that his broker holds substantial assets in the account of Slepenkov's company. *Id.* at 10.

As the facts suggest, Slepenkov and Zakharchenko are likely already aware of the action against them at this point in time. Furthermore, the alternative means of service proposed by the Commission are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314. Accordingly, the Commission's motion to serve the summons and complaint by

alternative means, specifically to Slepenkov's and Zakharchenko's email addresses, and upon Slepenkov's United States broker [D.E. 307], is hereby granted.

*s/ Michael A. Hammer*_____
**United States Magistrate Judge**

Dated:  December 13, 2016