<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | Civil Action No. 15-6076 (MCA) (MAH) |
| Plaintiff, | OPINION |
| v. | |
| **ARKADIY DUBOVOY, et al.,** | |
| Defendants. | |

**I.   INTRODUCTION**

This matter comes before the Court by way of Plaintiff Securities and Exchange Commission's (the Commission) motion for leave to serve the summons and complaint by alternative means upon Defendants Pavel Dubovoy ("Dubovoy"), Nelia Dubova ("Dubova"), Ivan Turchynov ("Turchynov"), and Oleksander Ieremenko ("Ieremenko") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 4(f)(3).  Pl.'s Br. in Supp. of Mot., D.E. 346-1, at 2. Specifically, the Commission requests leave to serve all Defendants by publication in The New York Times International Edition and via previously used email addresses.  *Id.*  The Commission further seeks to serve Defendants Dubovoy and Dubova via Facebook.  *Id.*  Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument.  For the reasons set forth below, the Court will deny without prejudice Plaintiff's motion in its entirety.

## II.  BACKGROUND

On August 10, 2015, the Commission filed this action against Dubovoy, Turchynov, Ieremenko, and Dubova as well as other Defendants, alleging violations of Section 17(a) of the Securities Act of 1933 and Sections 10(b), 20(b), and 20(e) of the Securities and Exchange Act of 1934.  Compl., D.E. 1, ¶¶ 222-234.

The Commission alleges that from 2010 to 2014, while residing in Ukraine, Turchynov and Ieremenko hacked into certain U.S. newswire services and obtained over 100,000 press releases for publicly traded companies before they were released to the public. Am. Compl., D.E. 28, ¶¶ 1-2, 72.  The stolen press releases "contained information about quarterly and annual earnings data for these [publicly traded] companies." *Id.* at ¶ 2.  The hackers then sold this information to traders in the United States and abroad. *Id.* at ¶¶ 78-86.  The traders proceeded to use the unpublished information to place illegal securities trades. *Id.* at ¶¶ 101-107.  Over the course of this five-year scheme, the traders allegedly made over $100 million in illegal profits. *Id.* at ¶ 1.

Pavel Dubovoy, one of the Dubovoy Group Defendants,[1] is alleged to have—in at least one instance—told the hackers which press releases to acquire. *Id.* at ¶ 23.  He is further alleged to have told other Defendants how to access the stolen press releases as well as "directed payments to Turchynov using a Dubovoy entity and confirmed those payments with Arkadiy Dubovoy." *Id.*  Nelia Dubova allegedly owned a brokerage account used in the scheme. *Id.* at ¶ 24.  The Commission alleges that she "was the signatory officer for another account involved in the scheme

---

[1] According to the Complaint, the Dubovoy Group Defendants "are a close-knit group of traders, consisting primarily of family, friends, and business associates of Arkadiy Dubovoy." Am. Compl., D.E. 28, at ¶ 19.

in the name of Defendant Beratto Group[.]" *Id*. Dubova and two other Defendants allegedly "had access to [the Berratto Group] account and it was used to make illicit trades in connection with the fraudulent scheme." *Id*. at ¶ 30.[2]

On October 26, 2018, the Commission filed a motion for leave to serve the summons and complaint by alternative means upon Defendants pursuant to Federal Rule of Civil Procedure 4(f)(3). *See generally*, Pl.'s Mot. for Alt. Service, D.E. 346-1. Specifically, the Commission requests leave to serve all Defendants by publication in The New York Times International Edition and via previously used email addresses. *Id.* The Commission's motion further requests to serve Defendants Dubovoy and Dubova via the social media platform, Facebook. *Id.* The motion is unopposed. On December 10, 2018, the Commission filed a letter advising the Court on the status of service on Defendant Dubova. Letter, Dec. 10, 2018, D.E. 356. There has been no filing on this issue since that time.

## III.   DISCUSSION

Federal Rule of Civil Procedure 4(f) governs service of process upon individuals in foreign countries. The Rule provides that an individual defendant may be served "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention."[3] Fed. R. Civ. P. 4(f)(1). Notwithstanding Rule 4(f)(1), however, Rule 4(f)(3) grants district courts with discretionary authority to direct service "by other means not prohibited by international agreements." *See Knit With v. Knitting Fever, Inc.,* Civ. No. 08-4221,

---

[2] For purposes of completeness, there are many other Defendants in this matter; however, as they are not involved in the Commission's motion, they are omitted from this Opinion.

[3] The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Hague Convention") "sets out the means for service of process for foreign defendants in international civil suits." *See Bravetti v. Liu*, Civ. No. 12-7492, 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013).

2010 WL 4977944, at *3 (E.D. Pa. Dec. 7, 2010).  Considering Rule 4(f)(1) and Rule 4(f)(3) together, it follows that if a foreign country has agreed upon means of service in accordance with the Hague Convention, then any other means of service employed by a plaintiff would constitute "means prohibited by international agreement[]."  *See Advanced Aerofoil Technologies, AG v. Todaro*, Civ. No. 11-9505, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) (holding that the Hague Convention's procedures for service were mandatory, because defendants were residing in Switzerland and Germany, two countries which had agreed to service consistent with the Hague Convention); and *Cephalon, Inc. v. Sun Pharm. Indus.,* Civ. No. 11-5474, 2011 WL 6130416, at *2 (D.N.J. Dec. 7, 2011) (determining that service inconsistent with the Hague Convention was insufficient because defendant was located in India, a country which had recently agreed to Hague Convention procedures for service of process).  Despite Rule 4(f)(1)'s mandate that a plaintiff should effectuate service in accordance with the Hague Convention, Rule 4(f)(3) directs that when there are no internationally agreed means of service, such as those means codified by the Hague Convention or otherwise, alternative service may be permissible, so long as service is ordered by the court and is not prohibited by international agreement.

Here, the Commission concedes that it is "not aware of current physical address[es] for any of the four Defendants . . ."  Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 21.  Therefore, the Hague Convention does not apply.  *See SEC v. Lines*, Civ. No. 07-11387, 2009 WL 3151793, at *3 (S.D.N.Y. Oct. 2, 2009) (stating "As Article I of the Hague Convention quite understandably recognizes, it 'shall not apply where the address of the person to be served with the document is not known.'") (citations omitted); *Bravetti,* 2013 WL 6501740, at *3 (confirming that the Hague Convention "shall not apply where the address of the person to be served is unknown.") (internal quotation marks and citation omitted).  As the Hague Convention does not apply in these

circumstances, the Court may authorize "service by other means not prohibited by international agreements" under Federal Rule of Civil Procedure 4(f)(3).  While the Commission's brief does not inform the Court whether there are any international agreements that prohibit service via publication, email, or Facebook in either Russia or Ukraine, the Court need not reach this issue.[4]

Even if alternative means of service is permissible in this case, it is still necessary for the Court to determine whether the Commission's proposed means of alternative service comports with constitutional notions of due process.  *See Marlabs Inc. v. Jakher*, Civ. No. 07-4074, 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010).  The United States Supreme Court has explained that the method of service must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[T]rial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email."  *Rio Properties, Inc. v. Rio Intern. Interlink,* 284 F.3d 1007, 1016 (9th Cir. 2002).  However, what qualifies as sufficient service varies depending on each case's particular facts and circumstances.  *See Prediction Co. LLC v. Rajgarhia*, Civ. No. 09-7459, 2010 WL 1050307, at *1 (S.D.N.Y Mar. 22, 2010).   The Court, therefore, considers each proposed form of service in turn.[5]

---

[4] The Court need not reach this issue because, as is explained fully herein, the Commission's motion is denied without prejudice in its entirety.  Should the Commission refile this motion, the Commission is directed to address the applicability of any international agreements that prohibit service via publication, email, or Facebook in either Russia or Ukraine.

[5] At the outset the Court notes that, throughout its motion, the Commission consistently argues that "Defendants already know about the case."  *See* Pl.'s Br. in Supp. of Mot., D.E. 346-1, at 12; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 27 ("Defendants are undoubtedly aware of this case.").  To support that argument, the Commission relies on the amount of press

### A. *Service by Publication in The New York Times International Edition*

The Commission seeks to serve all Defendants via publication in The New York Times International Edition. The Commission argues that such service is reasonably calculated to provide notice of this lawsuit to Defendants as it is circulated in both Russia and Ukraine. Pl.'s Br. in Supp. of Mot., D.E. 346-1, at 12. The Commission proposes to publish notice once per week for four consecutive weeks in The New York Times International Edition. *Id.* at 14. The notice informs Defendants that they have been named in the Commission's lawsuit. *Id.* It also provides the name of the case, a summary of the allegations, the relief that the Commission seeks, a directive to contact the Commission's counsel, and warns of the possibility of a default judgment pursuant to Federal Rule of Civil Procedure 55(e). *Id.* at 14-15.

---

coverage this matter has allegedly received "both domestically and abroad." Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 27. The Commission cites articles published in the New York Times, USA Today, the Wall Street Journal, the New York Times International, the Wall Street Journal (Europe), The Moscow Times, and the Ukrainian News. *See* Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶¶ 27-37. The Commission further relies on the fact that it has "issued numerous news releases regarding this case, which have also been posted to [its] website." *Id.* at ¶ 38. The Commission then concludes that, as Defendants are aware of the case, the Court should permit the alternative forms of service that it has proposed.

The Court cannot agree that Defendants are aware of this matter. The Commission plainly admits that it is "not aware of current physical address[es] for any of the four Defendants . . ." Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 21. Without knowing any of Defendants' addresses, it cannot be said with any certainty what publications are available to Defendants, wherever they may be residing. Even if the Court were to assume, *arguendo*, that Defendants are residing in Russia or Ukraine as the Commission submits, the articles included in the international publications (the New York Times International, the Wall Street Journal (Europe), The Moscow Times, and the Ukrainian News) that the Commission relies upon are dated August 12, 2015 and August 13, 2015. *See* Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶¶ 34-37; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exhs. 26-29. The Commission does not rely on or provide the Court with any articles outside of that two-day period. Accordingly, the Court rejects the notion that Defendants are aware of this matter given the amount of press coverage that it has received.

Simultaneously, however, the Commission admits that it is "not aware of current physical address[es] for any of the four Defendants . . ." Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 21. As for Defendant Dubovoy, the Commission informs the Court that "he has not returned to the United States since this case and the criminal case were filed[.]" *Id.* at ¶ 3. The Commission contends that it "does not know the address at which Pavel currently resides, but believes he may be residing in Kiev, Ukraine." *Id.* at ¶ 4. To support that contention, the Commission relies on an August 22, 2018 editorial, whose author alleges to have spoken with Defendant Dubovoy in 2018. *Id.* at ¶ 5; *see also*, Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 1, Verge article. Additionally, "[c]iting a former pastor of the church [Dubovoy] attended, the author states that [Dubovoy] moved to Belarus after this case was filed, but has returned to Ukraine under an assumed name and Russian passport." Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 5; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 1, Verge article.

As for Defendant Dubova, the Commission contends that she is a resident of Ukraine. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 12. To support that contention, the Commission relies on a trading account that Defendant Dubova allegedly opened in 2012 wherein she stated that she resided in Odessa, Ukraine. *Id.* at ¶ 14; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 15, Dubova account application, at 13.[6] Presently, however, "Defendant Dubova's Facebook profile indicates that she now resides in Kiev, Ukraine and not Odessa, Ukraine." Letter, Dec. 10, 2018, D.E. 356, at 2. Therefore, "it appears that the address the Commission staff

---

[6] For purposes of completeness, in November 2017, as prescribed by the Hague Convention, the Commission transmitted "the service package to the Ukrainian Central Authority[]" hoping to effectuate service on Defendant Dubova in Odessa, Ukraine. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 15. However, to date, there has been no indication that the Ukrainian Central Authority effectuated service on her.

possessed for Dubova and at which Plaintiff has attempted service pursuant to the Hague Convention may no longer be valid . . ." *Id.*

As for Defendant Ieremenko, at the time the Amended Complaint was filed, his address was unknown, but the Commission believed that he was in Kiev, Ukraine. *See* Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 22. The Amended Complaint included an address for Defendant Turchynov in Kiev, Ukraine, ". . . but the Commission staff believes that address may no longer be valid." *Id.* at ¶ 23. Therefore, the Commission "does not believe that it possesses a current, valid physical address for [either]." Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 21.

The Commission's argument in support of its request to effectuate service via publication is not well taken. The Commission admits that it is currently unaware of Defendants' respective addresses but seeks to serve them through a publication that circulates in Russia and Ukraine. As the Commission is unsure of Defendants' respective locations, it cannot be determined with any precision which publication, if any, each Defendant is likely to read.[7] The Court, therefore, cannot conclude that the proposed notice in The New York Times International Edition is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

---

[7] The Court is specifically unpersuaded by the Commission's reliance on an August 22, 2018 editorial, whose author alleges to have spoken with Defendant Dubovoy in 2018. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 5; *see also*, Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 1, Verge article. The Court has no way of assessing the accuracy of the article or the credibility of its author, and, therefore, cannot rely on it for purposes of proving Defendant Dubovoy's location.

B. *Service by Email*

The Commission further seeks to serve all Defendants via email. The Commission argues that there is evidence demonstrating that Defendants have previously used the email addresses through which the Commission seeks to effectuate service.[8] Pl.'s Br. in Supp. of Mot., D.E. 346-1, at 16.

---

[8] In support of its request, the Commission notes that this Court previously granted a motion for leave to serve the summons and complaint by alternative means on other Defendants. *See* Opinion and Order, Dec. 13, 2016, D.E. 319, 320. There, this Court permitted the Commission to serve Defendants Slepenkov and Zakharchenko via their respective email addresses and upon Slepenkov's United States broker. *Id.* at 7-8. This Court explained:

> The Commission's submissions in support of its motion reveal that Zakharchenko used his email address to communicate with his broker at least three times after the TRO materials were served. Exhs. 5 to 7 to Green Decl., D.E. 307-7 to 9. Furthermore, although there is no evidence demonstrating Slepenkov has recently accessed his email accounts, neither email address to which the TRO papers were directed produced automatic replies indicating "a bad or inoperative address." Pl.'s Br. in Supp. or Mot. at 5, D.E. 307-1. Additionally, an attorney wrote to this Court on Zakharchenko's behalf, purporting to have made contact with Zakharchenko in an effort to become involved in the action, and Slepenkov's former employer alleged he spoke with Slepenkov specifically about this case. *Id.* at 5. While the Commission has not produced any evidence directly demonstrating contact between Slepenkov and his broker since the complaint was filed, it is reasonable to expect that Slepenkov would maintain regular contact with his broker, considering that his broker holds substantial assets in the account of Slepenkov's company. *Id.* at 10.

*Id.* at 7. The facts giving rise to this Court's December 13, 2016 Opinion [D.E. 319] are easily distinguishable from the facts presently before the Court. First, the most recent email from or to any of the proposed email addresses is dated April 30, 2014, which is over a year before the Complaint was filed. Second, the Commission does not represent having ever sent any emails to any of the proposed email addresses to determine whether it was a valid operating address, *i.e.*, whether the email was returned undeliverable. Third, no attorney has contacted this Court on the behalf of any Defendant included in the present motion. Accordingly, the Commission's reliance

Specifically, the Commission seeks to serve Defendant Dubovoy through the email address DubovoyP@gmail.com. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 7. To prove that Defendant Dubovoy owns that email address, the Commission relies on an email chain, with the most recent email being a February 15, 2013 email from Defendant Pavel Dubovoy to Arkadiy Dubovoy. *Id.*; *see also*, Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 3, Feb. 15, 2013 email. The Commission does not, however, provide anything by way of proof that Defendant Dubovoy has used that email address since February 15, 2013.

The Commission appears to request to serve Defendant Dubova through the email address nelyadubova@yandex.ru. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 14. Defendant Dubova allegedly listed that email address on the application that she completed to open her trading account. *Id.*; *see also*, Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 15, Dubova account application, at 12. The application is dated July 9, 2012. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 15, Dubova account application, at 13. The Commission does not, however, provide anything by way of proof that Defendant Dubova has used that email address since July 9, 2012.

The Commission seeks to serve Defendant Turchynov through the email address warninggp@gmail.com. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 25. To prove that

---

on this Court's December 13, 2016 Opinion [D.E. 319] as support for its present motion is unavailing.

The Commission also relies on *SEC v. Zavodchikov*, Civ. No. 16-845 (MCA) (LDW), Memorandum Opinion and Order, Aug. 30, 2017, D.E. 18, to support its request. In that case, the Security and Exchange Commission had sent ". . . emails to the addresses associated with Zavodchikov, Bokarev, Panko, and Alepo without receiving notifications that such emails were undeliverable . . ." *Id.* at 4. Thus, the Court granted the plaintiff's request for alternative service. *Id.* at 5. Here, however, no such emails were sent to determine whether they would be returned undeliverable.

Defendant Turchynov owns that email address, the Commission relies on two emails dated January 8, 2011 from Apple Developer Support to warninggp@gmail.com and addressed to Ivan Turchinoff. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 18, Jan. 8, 2011 email. The first email is addressed to Ivan Turchinoff; however, the second email is not addressed to anyone. *Id.* The Commission seeks to serve Defendant Ieremenko through the email address Alex.Boesky@gmail.com. To prove that Defendant Ieremenko owns that email address, the Commission relies on an email dated April 30, 2014 from Forex Trend Limited to Defendant Ieremenko. *See* Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 18, April 30, 2014 email.

The Commission's argument that service via email is reasonably calculated to apprise Defendants of the pendency of this action is unpersuasive. Indeed, the most recent email from or to any proposed email address that the Commission relies on to support email service is dated April 30, 2014, and it is from Forex Trend Limited to Defendant Ieremenko. *Id.* That is more than one year before the Commission filed the Complaint. Similarly, the Commission seeks to serve Defendant Dubovoy through an email address that was last used on February 15, 2013— more than two years before the Commission filed the Complaint. There is no indication that any Defendant has used his or her alleged email address since the Complaint was filed in August 2015. As for Defendant Dubova specifically, the Commission provides no proof that the email address it seeks to serve her through was ever functional, let alone functional since the Complaint was filed. The Commission merely asserts Defendant Dubova listed that email address on the application that she completed when opening her trading account in July 2012. *See* Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 14; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 15, Dubova Account Application, at 12. That was nearly three years before the Commission filed the Complaint.

Not only has there not been an email from or to any of the proposed email addresses since the Complaint was filed, the Commission does not represent undertaking any efforts to determine whether any of the proposed email addresses still function. For example, the Commission has not sent any test emails to the proposed email addresses to see if the emails would be returned as undeliverable. Nor has the Commission claimed that any such effort likely would be futile. Nor has the Commission issued subpoenas to the email address providers seeking proof as to who owns the account. Accordingly, the Court cannot conclude, based on the current record, with a reasonable degree of confidence that service via email will apprise any Defendant of the pendency of this action.

### C. *Service through Facebook*

The Commission further seeks to serve Defendants Dubovoy and Dubova through the social media platform, Facebook. The Commission argues that service via Defendants' respective Facebook accounts is proper, as "both accounts appear active as items were [recently] posted . . ." Pl.'s Br. in Supp. of Mot., D.E. 346-1, at 17. The Commission further argues that service via Facebook is reasonably calculated to provide notice of this matter to both Defendants. *Id.*

The Commission alleges that Defendant Dubovoy's Facebook indicates that he lives in Kiev and works for the Association of Real Estate Specialists of Ukraine. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 8; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 8, Dubovoy Facebook timeline. The Commission further alleges that Defendant Dubovoy's Facebook photos match the picture on his passport. Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 9; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 9, Dubovoy Facebook photos; Exh. 5, Dubovoy Passport photo. Additionally, the Commission contends that "a post on Pavel's Facebook timeline, dated September 13, 2018, by Vladimir Omelchuk, a church pastor, includes a picture of Pavel

with others." Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 10; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 7, Facebook post.  The Commission represents having last accessed Defendant Dubovoy's Facebook on October 24, 2018.  Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 10.

As for Defendant Dubova, the Commission alleges that her Facebook account is active, and it was updated as recently as October 2018.  Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 17; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 17, Dubova Facebook timeline. The Commission further alleges that, as of September 12, 2018, Defendant Dubova's Facebook timeline reflects an updated profile picture, which is the same as her passport photo.  Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 20; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 16, Dubova Facebook photos; Exh. 15, Dubova passport photo, at 18.

The Commission notes that although "the name listed at the top of her Facebook account is Nelya Dubovaya, the URL at the bottom of each page shows her profile name as 'nelyadubova', www.facebook.com/nelyadubova/."  Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 19.  The Commission, therefore, submits that Dubova must be her maiden name, as her "Facebook family page lists a sister whose last name is Dubova."  *Id.*; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 37, Dubova Facebook family section.

The Court does not agree that service via Facebook is reasonably calculated to provide notice of this matter to Defendants Dubovoy and Dubova.  As the Commission failed to subpoena the provider of the proposed email addresses, the Commission also failed to subpoena Facebook to gather proof that Defendants Dubovoy and Dubova own the accounts.  Furthermore, the Commission does not set forth any affirmative acts that Defendant Dubovoy has taken on his alleged Facebook account.  Rather, the Commission relies on a post by an alleged church pastor

on Defendant Dubovoy's Facebook that includes a picture of Defendant Dubovoy with others. *See* Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 10; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 7, Facebook post. While the Commission alleges that Defendant Dubova updated her Facebook account as recently as October 2018, it also admits that the name listed at the top of the alleged Facebook account is Nelya Dubovaya—not Nelya Dubova. *See* Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, at ¶ 19. The Commission assumes then that Dubova must be her maiden name, as her "Facebook family page lists a sister whose last name is Dubova." *Id.*; Decl. of John Donnelly, Oct. 26, 2018, D.E. 347, Exh. 37, Dubova Facebook family section. Without more, the Court cannot conclude that service via Facebook will apprise Defendants Dubovoy and Dubova of the pendency of this action.

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff's motion for leave to serve the summons and complaint by alternative means upon Defendants pursuant to Federal Rule of Civil Procedure 4(f)(3) is denied without prejudice in its entirety.

The Court shall issue an order consistent with this Opinion.

> s/*Michael A. Hammer*
> **UNITED STATES MAGISTRATE JUDGE**

Date:  April 29, 2019