# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE          .
COMMISSION,                      .
                                 .
       Plaintiff,                . Case No. 15-cv-06076
                                 .
vs.                              . Newark, New Jersey
                                 . March 15, 2019
DUBOVOY et al.,                  .
                                 .
       Defendants.               .


                       TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE MICHAEL A. HAMMER
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff      JOHN V. DONNELLY, III, ESQ.
Securities and         U.S. Securities & Exchange Commission
Exchange               1617 JFK Boulevard
Commission:            Suite 520
                       Philadelphia, PA 19103
                       (215) 597-3100
                       donnellyj@sec.gov

                       JENNIFER CHUN BARRY, ESQ.
                       U.S. Securities and Exchange
                       Commission




Audio Operator:

Transcription Service: KING TRANSCRIPTION SERVICES
                       3 South Corporate Drive, Suite 203
                       Riverdale, NJ  07457
                       (973) 237-6080

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
 1   (APPEARANCES continued)

 2
     For the Defendant        ROBERT KNUTS, ESQ.
 3   Memelland                Sher Tremonte LLP
     Investments Ltd.:        90 Broad Street, 23rd Floor
 4                            New York, New York 10004
                              (212) 202-2638
 5                            Rknuts@shertremonte.com

 6
     For the Defendant        LEONID MOMOTOK
 7   Leonid Momotok:          1610 Pepperbush Court
                              Suwanee, Ga 30024
 8                            Pro Se

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           (Commencement of proceedings at 10:14 A.M.)

2

3           THE COURT:  All right.  We're on the record in the

4  matter of Securities and Exchange Commission versus Dubovoy,

5  et al., Civil No. 15-6076.

6           We -- the Court ordered this conference to, among

7  other things, address the motion of Sher Tremonte LLP, to

8  withdraw as counsel for defendant Memelland Investments.

9           Can I have appearances, please, beginning with the

10 SEC.

11          MR. DONNELLY:  Good morning, Your Honor.  John

12 Donnelly from the Philadelphia office for the Securities and

13 Exchange Commission.

14          MS. BARRY:  Good morning, Your Honor, Jennifer

15 Barry for the SEC.

16          THE COURT:  All right.  Good morning.

17          I apologize, by the way, for the fact that it is

18 really hot and humid in the courtroom.  I don't understand

19 that, because only two days ago, it was, like, 40 degrees in

20 here.  So I don't understand heating.

21          Counsel.

22          MR. KNUTS:  Sure.  Robert Knuts from Sher Tremonte

23 LLP.  And I think you just answered your question,

24 Your Honor.  Because it was that cold two days ago.

25          THE COURT:  Overcompensate.

1              And do I have Mr. Momotok on the phone?

2              MR. MOMOTOK: Yes, Your Honor.

3              THE COURT: All right.  Good morning, Mr. Momotok.
4    Thank you very much for phoning in today.

5              MR. MOMOTOK: Thank you for inviting me.

6              THE COURT: Sure. All right. As I said, counsel
7    for Sher Tremonte filed the application to withdraw. I also
8    ordered on March 13th that -- for purposes of the motion to
9    withdraw, a client representative of Memelland Investments
10   Ltd., is required to appear in person for the conference.
11   So -- and I would note that we do not have a representative
12   here.

13             So can I ask, Mr. Knuts, can you please explain
14   your efforts to procure a representative from Memelland and
15   why there's not somebody from Memelland here.

16             MR. KNUTS: So just for background and context --

17             THE COURT: Yes.

18             MR. KNUTS: -- Memelland is a -- is a non-U.S.
19   entity.  The address that we have for Memelland is in Cyprus.
20   We have communicated with a Memelland representative
21   primarily via email and phone calls.  We -- we -- just,
22   again, for context, shortly before the September conference
23   in this case, my partner Michael Tremonte, met with a
24   Memelland representative in London.  And we believed at that
25   time that we had an agreed-upon plan of action in terms of

1  representing Memelland in this case.  It was based upon that
2  plan of action that, you know, we took the positions that we
3  did with respect to moving forward with the case when we
4  appeared before Your Honor.
5           Unfortunately, the Memelland representative then
6  in -- later in September and October, clearly had a change of
7  mind with respect to the plan that had been agreed to in
8  London.  And, thereafter, we did not experience the kind of
9  cooperation that we would -- needed to proceed with such
10 things as initial disclosures in the case.
11          When we filed the motion, we notified -- you know,
12 we used the regular email addresses and left phone messages
13 and sent the motion.
14          Last -- and then when the SEC filed its opposition
15 papers, we did the same thing.
16          And last week on March --
17          THE COURT:  So let me just -- I just want more --
18 maybe parsed out a little bit more.
19          Can you explain to me what was done to -- if I
20 understand you correctly, when you made the application, what
21 you did to give notice to Memelland that you were making the
22 application.  Because obviously, one of the Court's concerns
23 is has Memelland had a reasonable opportunity to become
24 aware, to have notice of the application, to respond to the
25 application, because from where the Court sits, for all I

1  know -- and I've had this happen in other cases where the
2  client says, "I don't want to lose my lawyer. I missed my
3  lawyer's calls. The lawyer hasn't called me." And the
4  lawyer says, "I tried calling and emailing you 16 times. Why
5  don't you" -- and then the person says, "I lost my phone."
6  And the lawyer says, "Well, you didn't tell me you lost the
7  phone." And I've actually had things like of -- along that
8  line happen.
9           So I want to just be sure, because obviously the
10 other thing is if I grant the motion, then Memelland is
11 either going to get a new lawyer and come into the case, or
12 there's always a very real possibility, based on my
13 experience, Memelland's not going to, in which case, the SEC,
14 justifiably, is going to be looking to the Court to enter
15 default and ultimately default judgment. And before it goes
16 down that road, the Court, obviously, has an obligation to
17 make sure that Memelland has at least had fair notice, a fair
18 opportunity to be heard, understands the risks of not -- of
19 not responding. And then whatever, you know, action they
20 take or don't take is on them.
21          So can you just parse out exactly what's been done
22 to give Memelland notice of your motion and this hearing
23 today.
24          MR. KNUTS: Sure. So with respect to the initial
25 motion papers, we sent it both mail, email, and provided

1  telephone notice.  I know -- I was on a conference call with
2  the Memelland representative before we filed letting them
3  know that we would be filing.
4          When -- when the -- I think most saliently, to
5  Your Honor's point, when the SEC filed its opposition papers
6  and in particular, you know, requested prospective relief in
7  the event that Memelland did not retain new counsel, we
8  notified Memelland of, you know, what the prospective relief
9  the SEC might be seeking down the road.
10         THE COURT:  This was after the SEC had filed its
11 op- --
12         MR. KNUTS:  Correct.
13         THE COURT:  -- or I am not sure how much of an
14 opposition as much as it is a response.
15         MR. KNUTS:  Right.
16         THE COURT:  But, right, I got you.
17         MR. KNUTS:  And on March 5th, you know, of this
18 year, we received an email from Memelland's representative in
19 response to that email from November in which the Memelland
20 representative, you know, obviously acknowledging receipt of
21 the information about the SEC's position, communicated that
22 he just wanted to be informed once the Court approves the
23 withdrawal.
24         THE COURT:  Okay.
25         MR. KNUTS:  And then this week when Your Honor

1  issued that order, again, immediately, within minutes, you
2  know, sent -- emailed the text order to the Memelland
3  representative, pointing out that Your Honor was requiring a
4  representative to appear this morning.
5              THE COURT:  Okay.  And, obviously, I cannot force
6  Memelland to come.  But I am satisfied with the efforts.
7              When you gave notice to Memelland that I was
8  requiring their appearance, did they make any request to move
9  the date or to proceed telephonically as the Court's allowed
10 Mr. Momotok to do?
11             MR. KNUTS:  No.
12             THE COURT:  Okay.  All right.  And so are you
13 satisfied that Memelland has had notice of the motion, the
14 SEC's response, and their opportunity to -- and the Court's
15 order for them to appear today, Mr. Knuts?
16             MR. KNUTS:  Yes, I am.  And the only other fact
17 I'd, you know, add to the record on that is that I did
18 receive a call from another attorney, I think, some six to
19 eight weeks ago, you know, indicating that they were
20 considering appearing on behalf of Memelland in the case,
21 indicating that they had -- they had had a conversation with
22 a Memelland representative about substituting in as counsel.
23             THE COURT:  Okay.  Okay.
24             MR. KNUTS:  And that was approximately the time the
25 original -- I mean -- this -- the original return date of

```
 1  this motion --
 2          THE COURT:  It's been adjourned a couple of times
 3  because we had weather issues, and we had government shutdown
 4  issues.
 5          MR. KNUTS:  Yes.
 6          THE COURT:  We've had issues.  Right.  Okay.
 7          Yeah, I mean, the motion's been out there.
 8          Does -- does the SEC wish to be heard on the
 9  motion?  I mean, I've read your response, and we're going to
10  get to that, to the what comes next next.
11          But in terms of the substance of the motion, does
12  SEC wish to be heard?
13          MR. DONNELLY:  No, Your Honor.  I think Your Honor
14  has accurately characterized our opposition as a response,
15  and, as we say in our papers, the SEC lacks sufficient
16  information to take a position one way or the other.  And
17  just agree with what Your Honor said about ensuring that
18  Memelland had notice and opportunity to be heard.  And then
19  the, you know, potential remedies if they do not substitute
20  counsel and if counsel withdraws, because, as an entity, they
21  cannot appear pro se.
22          THE COURT:  Right.
23          MR. DONNELLY:  And as you point out, we would, you
24  know, in due course be requesting a default and then default
25  judgment, if that comes to pass.
```

1          THE COURT: All right.

2          All right. I -- Mr. Momotok, anything you want to

3  add, sir?

4          MR. MOMOTOK: No. No, Your Honor.

5          THE COURT: Okay. All right. I've carefully

6  considered Sher Tremonte's motion seeking leave to withdraw

7  and the SEC's response and the representations that Mr. Knuts

8  has put on the record today. So Sher Tremonte makes the

9  application to withdraw as counsel for Memelland

10 Investments -- I'm sorry -- Tremonte -- strike that -- sorry.

11 Memelland Investments Ltd. This Court's consideration of the

12 matter is guided by New Jersey Rule of professional --

13 sorry -- New Jersey Court Rule 1.16, which, in turn,

14 implicates the New Jersey Rules of Professional Conduct.

15         There are a number of factors for the Court to

16 consider in determining whether to grant the application.

17 Those may include, under 1.16(b), which is permissible

18 withdrawal, the client insisting on the attorney taking

19 action that the attorney considers repugnant or in the event

20 of a -- disagreement, which also encompasses situations where

21 the client essentially refuses to cooperate or engage with

22 their counsel to put counsel in the position of being able to

23 discharge its duty to provide fair and zealous representation

24 to the client.

25         And still another factor, of course, is where the

1  client has essentially stopped paying their counsel.

2           There are number of cases where, perhaps -- even
3  perhaps the majority cases where leave to withdraw is granted
4  because counsel has been placed in the position of being
5  forced to choose between defending the case versus engaging
6  with or representing an actual paying client.  See for
7  example, PNY Technologies Inc. v. Salhi, 2016 WL 10570917
8  (D.N.J. September 26, 2016) wherein the court granted leave
9  for the -- for counsel to "withdraw from the case where
10 counsel's been placed in a difficult position due to
11 defendant's failure to timely pay their legal fees."  Id. at
12 page 2.

13          Among the factors the Court must consider in
14 determining whether to grant the withdrawal or the reason why
15 the withdrawal is sought, potential prejudice to -- not just
16 the litigants but to the efficient and orderly and timely
17 administration of the case and the degree of potential delay
18 caused by resolution.  See e.g. High Crest Functional Medical
19 Inc. LLC v. Horizon Blue Cross Blue Shield, 2017 WL 4405064
20 at *1 (D.N.J. October 4, 2017).

21          Preliminarily, the Court is satisfied with
22 counsel's representations as to its efforts to reach and
23 provide notice to Memelland Investments of its application,
24 of the SEC's response, and of the Court's -- of the hearing
25 today and the Court's order that a representative of

1  Memelland Investments attend.
2          Mr. Knuts, a well-respected counsel, has
3  represented on the record that there were discussions with
4  Memelland about what Sher Tre- -- that Sher Tremonte was
5  contemplating making the motion to withdraw even before the
6  motion was filed.  When Sher Tremonte made the application,
7  they provided notice to Memelland via mail and via email.
8  And, again, after the SEC filed its response, that was
9  communicated to Memelland Investments.  As Mr. Knuts has
10 noted, there was an email from a Memelland representative
11 acknowledging the existence of the motion and that it was
12 pending and requesting only that Memelland Investments be
13 informed once the motion to withdraw has been granted.
14         There is no doubt, then, in the Court's mind that
15 Memelland has had reasonable opportunity to learn of the
16 pending motion to withdraw, to take any position it deemed
17 appropriate with regard to the motion to withdraw, and to
18 have the opportunity to appear today, and if, in light of the
19 location of Memelland, to seek to either adjourn the hearing
20 dated or to participate, as Mr. Momotok, who's not
21 represented by any counsel, did, to request that they appear
22 via telephone or some alternate means.  They have waived
23 that.
24         I turn, then, to the substance of the motion.  I
25 find that there is good cause for the motion for two reasons.

1   One, as counsel has represented, Memelland has ceased to pay
2   counsel for its work in this matter.  See Declaration of
3   Robert Knuts, Docket Entry 348-1 at paragraph 3.  This
4   includes a number of past invoices, but moreover as well --
5   and it's not -- I don't believe -- Sher Tremonte is not an
6   enormous firm, Mr. Knuts?
7            MR. KNUTS:  It is not, Your Honor.
8            THE COURT:  Right.  How many lawyers?
9            MR. KNUTS:  Well, knock on wood, we've grown to 20.
10           THE COURT:  Okay.  Well, good for you.  Knock on
11  wood.
12           Hardly -- well, that's certainly evidence, I guess,
13  of growth.  Compared to the potential time commitment and
14  effort required in this case to defend the charges -- or the
15  claims that SEC has brought, I do agree that that would
16  impose an unreasonable financial burden on this case going
17  forward.  There is a lot left to be -- to do in this case, as
18  the SEC, who has opposed Sher Tremonte's motion, but,
19  responded more, I suppose, to voice concern over moving the
20  case forward.  It is a 2015 case, a fact of which this Court
21  is acutely aware.  But the SEC's concern was that in light of
22  what's left to be done in this case, there not be an
23  unreasonable delay, if the Court were to grant Sher
24  Tremonte's application, which the Court will.
25           And I agree with the SEC in that regard.  But there

1  is -- and there is a lot to be done.  There's still discovery
2  to be done before we even get to adjudication on the merits
3  of the claims in the complaint.
4           Moreover, Mr. Knuts has certified and also stated
5  on the record today that notwithstanding apparently some
6  point in time back in September 2018, at which point, counsel
7  and Memelland Investments believed -- or at least counsel
8  believed that they and Memelland Investments were on the same
9  page in terms of formulating a theory of the defense, has
10 gone by the wayside.  And in the interim, Memelland has
11 stopped cooperating with counsel.
12          Therefore, the Court is persuaded that to require
13 Sher Tremonte to continue to and litigate this case without
14 payment and without cooperation by their client, would put
15 them in a nearly impossible situation.
16          In terms of prejudice to the litigants or
17 unreasonable delay, I do not find that those factors counsel
18 against granting the motion, although there is work to be
19 done.  Part of the delays in this case have certainly not
20 been because of defense counsel.  They haven't also -- I'm
21 not trying suggest they've been because of any fault of the
22 Government either.  There have been stays due to parallel
23 criminal proceedings.
24          Moreover, this Court, as the SEC proposes in its
25 response to the motion, has control over allowing a

```
 1   reasonable time for Memelland Investments to secure new
 2   counsel, as well as to ensure that the case thereafter
 3   proceeds efficiently.
 4           So I'm going to grant the application of Sher
 5   Tremonte for the reasons that I've just articulated to
 6   withdraw from this matter.
 7           What I would ask, though, Mr. Knuts is that you
 8   convey a copy of the Court's order.
 9           Will you be in position, Mr. Knuts, to provide a
10   copy of this Court's order to Memelland Investments to make
11   sure that they're aware that the application has been granted
12   and now they're -- they have to secure new counsel?
13           MR. KNUTS:  Absolutely.  We'll send it both by
14   email and regular mail to the addresses we have.
15           THE COURT:  All right.  I'm going to give Memelland
16   30 days from today to secure new counsel.  This motion has
17   been pending since October 30th.  Memelland, as I've already
18   found, has had notice of the application.  They didn't oppose
19   it, and so very likely had no real reason or basis to
20   believe, given the lack of opposition, and to have -- at
21   least allow for the real possibility that the motion would be
22   granted, and therefore one would hope that they've already
23   begun the search for new counsel.  I can't control that.  But
24   I do believe that 30 days is sufficient for them to file an
25   appearance or have an appearance filed on their behalf by new
```

```
 1  counsel.
 2            All right.  Where do we go from here?  We were
 3  together last -- well, we don't have -- I don't have all
 4  counsel here.  Right?  And in any event, we have a 30 --
 5  basically 30 days before Memelland either has no counsel, or,
 6  I assume, the Government will make some application?
 7            MR. KNUTS:  Your Honor, could I be then excused --
 8            THE COURT:  Mr. Knuts, thank you very much for your
 9  service.
10            MR. KNUTS:  Thank you, Your Honor.
11            THE COURT:  And now that I only have the SEC and
12  Mr. Momotok on the phone, here's what I'm inclined to do.  I
13  mean, all counsel were aware of today's proceedings.  All I
14  want to try and get an understanding is where are we with the
15  sentencing of Korchevsky and Khalupsky?
16            MR. DONNELLY:  Yes, Your Honor.  So Mr. Khalupsky
17  has been sentenced.  And we believe --
18            THE COURT:  I'm sorry.  Mr. Khalupsky was.  Right?
19            MR. DONNELLY:  Khalupsky, yes.
20            THE COURT:  Okay.
21            MR. DONNELLY:  He's been sentenced.  He was
22  sentenced in January.  We have negotiated a settlement with
23  him of this case that, as Your Honor is aware and we've said
24  in prior instances in this matter, the staff needs to submit
25  a recommendation regarding all potential settlements to the
```

## Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 23 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

s/ *Sara L. Kern*                                    28th of May, 2019
_____    _____
Signature of Approved Transcriber                   Date


Sara L. Kern, CET\*\*D-338
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080