# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**SECURITIES & EXCHANGE COMMISION,**

     *Plaintiff,*

  v.

**ARKADIY DUBOVOY, et al.,**

     *Defendants.*

Civil Action No. 15-6076

ORDER

  **THIS MATTER** comes before the Court on Plaintiff Securities and Exchange Commission's (the "Commission") Motion for Default Judgment[1] pursuant to Federal Rule of Civil Procedure 55(b) against Defendants Oleksander Ieremenko ("Ieremenko") and Pavel Dubovoy ("Pavel" and, together with Ieremenko, the "Defaulting Defendants"), ECF No. 430;

  and it appearing that this action arises out of the Defaulting Defendants' participation in an immense fraud scheme on the U.S. securities markets that involved Ukrainian computer hackers stealing press releases from American newswire services (the "Newswire Services") before they were published, Am. Compl. ¶¶ 1-10, ECF No. 28;

  and it appearing that from 2010 to 2015, Ieremenko, a computer hacker who resides in Ukraine, and another individual ("Hacker 2" and together with Ieremenko, the "Hackers") stole more than 100,000 press releases containing quarterly and annual earnings data for publicly-traded companies from the Newswire Services' computer systems, id. ¶¶ 1-2, 15, 71-76;

---

[1] In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." DIRECTV Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).

1

and it appearing that the Hackers transmitted this data to traders, including Pavel, id. ¶¶ 3, 5-6, 99;

and it appearing that Pavel, a Ukrainian resident, introduced his brother and nephew—respectively Arkaydiy and Igor (together with Pavel, the "Dubovoys"), residents of the United States—to the scheme and closely communicated with the Hackers, Arkaydiy, and Igor throughout the duration of the scheme, id. ¶¶ 19-23, 92-100;[2]

and it appearing that the Dubovoys, like other traders, profited off of the material nonpublic information they received and generated more than $11 million in gross ill-gotten gains, id. ¶¶ 92-100; Declaration of Dr. Eugene P. Cangels ("Cangels Decl.") ¶ 13 & Tables 2 and 3.F, ECF No. 431;[3]

and it appearing that on August 10, 2015, the Commission filed the Complaint, which it amended on August 23, 2015, ECF Nos. 1, 28;

and it appearing that on August 10, 2015, the Court granted the Commission's motion for a temporary restraining order ("TRO"), which froze assets and granted other relief, ECF No. 12, and revised that TRO on August 11, 2015, ECF No. 13;

and it appearing that on August 24, 2015, the Court granted a preliminary injunction, which froze the Defendants' assets, ECF No. 31;

and it appearing that in late 2019 and early 2020, the Defaulting Defendants were served with process via alternative means approved by the Court, see ECF Nos. 392, 395, 400;

---

[2] Arkadiy and Igor settled the claims against them in this case and pled guilty in the parallel criminal case. As part of the settlement, Arkadiy and Igor are jointly and severally liable for the Dubovoys' $11 million of ill-gotten gains. See ECF Nos. 412, 417.

[3] Although the accounts used by the Dubovoys were not in Pavel's name, Arkadiy testified at the criminal trial that Pavel had access to the accounts. See Declaration of John Donnelly Ex. 1 at 1538:18-1540:16, ECF No. 432.1.

and it appearing that the Defaulting Defendants have failed to answer or otherwise respond to the Amended Complaint as of the date of this Order;

and it appearing that on March 31, 2020, the Commission requested the Clerk of the Court enter default against the Defaulting Defendants, ECF No. 401, and the Clerk entered default on the same day;

and it appearing that on November 10, 2020, the Commission filed the instant Motion seeking judgment against the Defaulting Defendants, ECF No. 430;[4]

and it appearing that default judgment may only be entered against a properly-served defendant, see E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014);

and it appearing that the docket reflects proper service upon the Defaulting Defendants, ECF Nos. 392 (approving service via email and periodic publication in the New York Times International Edition); 395 (Declaration of John Donnelly Regarding Service of Process), 400 (Declaration of John Donnelly Regarding Service by Publication);[5]

and it appearing that the Court must determine whether it has jurisdiction over the action and the parties before entering a default judgment, see Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 848 (D.N.J. 2008);

---

[4] Prior to moving for default judgment against the Defaulting Defendants, the Commission moved for default against other defendants in this case and a related case, which the Court granted. ECF Nos. 393-94; SEC v. Zavodchikov, No. 16-845 (D.N.J), ECF Nos. 50-51, 56-57.

[5] On April 29, 2019, the Honorable Michael A. Hammer, U.S.M.J., denied the Commission's motion for leave to serve the summons and Amended Complaint by alternative means on the Defaulting Defendants. ECF Nos. 373-74. Judge Hammer explained that the proposed methods of service—service via email and publication in the New York Times International Edition, were not reasonably calculated to reach the Defaulting Defendants because (1) the Commission did not know the Defaulting Defendants' precise location, and (2) the Commission had provided no proof that the proffered email addresses remained functional. ECF No. 373. In later approving these methods of service, Judge Hammer acknowledged that the Commission had resolved the previously identified defects by proving that these methods were reasonable calculated to reach the Defaulting Defendants and were not otherwise prohibited by international law. See ECF No. 392 at 1 (incorporating the Commission's Statement of Reasons).

3

and it appearing that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Amended Complaint raises questions of federal securities law under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77a et seq., and the Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a et seq., Am. Compl. ¶¶ 226-38;[6]

and it appearing that the Court has personal jurisdiction[7] over the Defaulting Defendants, as the Defaulting Defendants have purposefully availed themselves of the privileges of conducting activities within the United States by: (1) hacking the Newswire Services and stealing unpublished press releases for companies whose securities are traded on the American exchange, Am. Compl. ¶¶ 53-55, 71-75, and distributing press releases to traders located in the United States, id. ¶¶ 3-5 (Ieremenko); and (2) communicating extensively with traders in the United States throughout the scheme, id. ¶¶ 23, 87-88, and using stolen information to trade in U.S. securities on U.S. exchanges, id. ¶¶ 1-11, 21-23, (Pavel);

and it appearing that before entering a default judgment, the Court must also determine whether the Amended Complaint sufficiently pleads a cause of action and whether the Commission has proven damages, Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536, 538 (D.N.J. 2008);

and it appearing the Commission's Amended Complaint consists of four counts: (1) violation of Section 17(a) of the Securities Act for perpetrating a scheme to defraud ("Count One"); (2) violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder for

---

[6] The Securities Act and the Exchange Act both apply extraterritorially. See 15 U.S.C. § 77v(c), 15 U.S.C. § 78aa(b).

[7] The Securities and Exchange Acts authorize nationwide service of process and permit the exercise of personal jurisdiction to the full extent of the Due Process Clause of the Fifth Amendment. See 15 U.S.C. §§ 77v(a), 78aa; Pinker v. Roche Holdings Ltd., 292 F.3d 361, 369 (3d Cir. 2002). When a federal statute authorizing nationwide service of process, personal jurisdiction can be established when a defendant has minimum contacts with the United States as a whole. See Pinker, 292 F.3d at 371-73 (3d Cir. 2002); SEC v. One or More Unknown Traders in the Sec. of Fortress Inv. Grp., LLC, No. 17-01287, 2018 WL 4676043, at *4 (D.N.J. Sept. 27, 2018). Under the minimum contacts analysis, the Court considers whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 877 (2011) (citations and quotation marks omitted).

4

perpetrating a scheme to defraud ("Count Two"); (3) violations of Section 20(e) of the Exchange Act for aiding and abetting the Hacker's scheme to defraud ("Count Three"); and (4) violations of Section 20(b) of the Exchange Act for advancing a scheme to defraud "through or by means of" the Hackers ("control person liability") ("Count Four"), Am. Compl. ¶¶ 226-38;[8]

and it appearing that to state a claim under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the Commission must show that (1) the Defaulting Defendants made material misrepresentations or omissions, or employed a device, scheme, or artifice to defraud; (2) with scienter; (3) in connection with the offer, purchase, and/or sale of a security; and (4) in connection with interstate commerce, SEC v. Desai, 145 F. Supp. 3d 329, 335 (D.N.J. 2015) (internal citations omitted);[9]

and it appearing that the Defaulting Defendants (1) employed a scheme to defraud in connection with the purchase or sale of U.S. securities by stealing material nonpublic information (Ieremenko), Am. Compl. ¶¶ 2, 71-74, and assisting in the trade of this information (Pavel), id. ¶ 23, which resulted in over $100 million of unlawful profit; (2) had a clear intent to defraud, as inferred by the alleged actions that they took in furtherance of the scheme, see Valicenti Advisory Servs. v. SEC, 198 F.3d 62, 65 (2d Cir. 1999) (explaining that scienter can be inferred from circumstantial evidence); see also Am. Compl. ¶¶ 1-10 (alleging that Ieremenko hacked into the Newswire Services in order to steal information); id. ¶ 23 (alleging that Pavel informed Arkadiy how to access the stolen information, directed payments to the Hackers on behalf of the Dubovoys,

---

[8] While Counts One and Two are brought against both Defaulting Defendants, Counts Three and Four are not brought against Ieremenko. Am. Compl. ¶¶ 226-38.

[9] Section 17(a) of the Securities Act prohibits fraudulent conduct in the offer or sale of securities, while Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit fraudulent conduct in connection with the purchase or sale of securities. See 15 U.S.C. §§ 77q(a), 78j(b); 17 C.F.R. § 240.10b-5. Regardless, the standard for stating a claim under these provisions is "essentially the same." SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (3d Cir. 1996).

and communicated with the Hackers, including telling the hackers which press releases to steal on at least one occasion); (3) the fraudulent scheme resulted in the trade of securities, id. ¶¶ 92-100; and (4) the fraudulent scheme occurred over international and interstate boundaries, see, e.g., id. ¶¶ 15-16, 23;

and it appearing that the Amended Complaint thus sufficiently pleads liability as to the Defaulting Defendants;[10]

and it appearing that before entering default judgment, the Court must consider: "(1) "prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) "whether defendant's delay is due to culpable conduct," Walker v. Pennsylvania, 580 F. App'x 75, 78 (3d Cir. 2014) (citations and quotation marks omitted);

and it appearing that the Commission will suffer prejudice absent an entry of default judgment as it will have no other means of obtaining relief;

and it appearing that, accepting the allegations in the Amended Complaint as true, the Defaulting Defendants do not appear to have a meritorious defense, see HICA Educ. Loan Corp. v. Surikov, No. 14-1045, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015) (weighing this factor in plaintiff's favor where the defendant failed to respond with "evidence or facts containing any information that could provide the basis for a meritorious defense");

and it appearing that the Defaulting Defendants' failure to respond to this lawsuit, in the face of allegations of substantial financial injuries, is sufficient to infer culpability, see U.S. Small Bus. Admin. v. Silver Creek Const. LLC, No. 13-6044, 2014 WL 3920489, at *5 (D.N.J. Aug. 11,

---

[10] Because the remedies for aiding and abetting liability under Sections 20(b) and 20(e) of the Exchange Act are identical to those available for primary violations under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act, see 15 U.S.C. § 78t, the Court need not address the Commission's arguments under Counts 3 and 4 of the Amended Complaint.

2014); Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (holding that defendant's failure to respond to communications from plaintiff and court support a finding of culpability);

and it appearing that although the Court accepts the facts pled in the Amended Complaint "as true for the purpose of determining liability, the plaintiff must prove damages," Moroccanoil, Inc. v. JMG Freight Grp. LLC, No. 14-5608, 2015 WL 6673839, at *2 (D.N.J. Oct. 30, 2015);

and it appearing that the Commission has requested that the Court (1) permanently enjoin the Defaulting Defendants from future securities law violations; (2) order Ieremenko to pay a civil monetary penalty of $318,987,117, equal to three times the gross profits generated by the fraud scheme; and (3) order Pavel to pay a civil monetary penalty of $33,028,806, equal to three times the gross profits generated in the Dubovoys' accounts, see Am. Compl. at 61-62; Comm'n Br. at 23, ECF No. 430.1; see also Cangels Decl. ¶ 13 and Table 2;[11]

and it appearing that the Court is "empowered to issue injunctions commanding compliance with the [federal securities] laws and [the Commission's] regulations promulgated thereunder," SEC v. Savoy Indus., Inc., 665 F.2d 1310, 1317 n.54 (D.C. Cir. 1981);

and it appearing that in determining whether an injunction is an appropriate remedy, the Court considers (1) the degree of the defendant's scienter, (2) whether the infraction was isolated or recurring in nature, (3) defendant's recognition of his or her wrongful conduct, (4) the sincerity of assurances against future violations, and (5) the likelihood that future violations may occur

---

[11] The Amended Complaint also seeks disgorgement and prejudgment interests against the Defaulting Defendants, relief the Commission now explicitly withdraws. Comm'n Br. at 23.

7

based on defendant's professional occupation, SEC v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980);[12]

and it appearing that an injunction is appropriate here because: (1) as discussed above, the Defaulting Defendants acted intentionally in carrying out the scheme to defraud the U.S. securities markets; (2) the scheme was recurring in nature, involving millions of dollars in securities trading over nearly five years, see, e.g., Am. Compl. ¶¶ 1-2 (explaining that the Hackers stole over 100,000 press releases generating more than $100 million in illegally gains); Canjels Decl. ¶ 13 and Table 2 and 3.F (describing how the Dubovoys made over 250 profitable trades, reaping over $11 million in illegal gains); (3) by failing to appear in this action, the Defaulting Defendants have shown no respect for U.S. securities laws and demonstrated no contrition for their unlawful conduct; (4) similarly, by failing to appear, the Defaulting Defendants have offered no assurances that they will act lawfully in the future; and (5) not only are future violations likely, but Ieremenko has continued to perpetrate similar schemes, see SEC v. Ieremenko, No. 19-505 (D.N.J.) (alleging that Ieremenko hacked the Commission's online system, stole nonpublic information, and transmitted information to traders);

and it appearing that Section 21A of the Exchange Act permits the Commission to bring an action against any person who violates the Exchange Act to seek a civil penalty that "shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale, or communication," 15 U.S.C. §§ 78u-1(a)(1)-(2);

---

[12] Unlike injunctions in the private-litigant context, the Commission need not show the risk of irreparable injury or the unavailability of adequate remedies at law. See, e.g., SEC v. Unifund SAL, 910 F.2d 1028, 1035-36 (2d Cir. 1990).

and that appearing that Section 21 of the Exchange Act applies because the Defaulting Defendants profited from the trades they executed while in possession of material nonpublic information—namely the unpublished corporate press releases stolen from the Newswire Services, Am. Compl. ¶¶ 1-10, 67-70;

and it appearing that in setting the penalty amount, the Court considers "(1) the egregiousness of the defendant's violations; (2) the isolated or recurrent nature of the violations; (3) the degree of the scienter; (4) the amount of illegal profits; and (5) the deterrent effect of the penalty in light of defendant's net worth," SEC v. Johnson, No. 02-5490, 2004 WL 5561799, at *5 (D.N.J. Aug. 27, 2004);

and it appearing that although the Commission has not provided any evidence of the Defaulting Defendants' net worth, the first four factors counsel in favor of a treble penalty in this case, given the breadth and length of the fraudulent scheme, the Defaulting Defendants' scienter as discussed supra, their failure to respond or accept responsibility herein, and the amount of illegal profits, see Am. Compl. ¶¶ 1-10; Canjels Decl. at Table 2;[13]

and it appearing that, accordingly, because the Defaulting Defendants have not contested the Commission's calculations, the Court will impose the following penalties, equal to three times the Defaulting Defendants' gross profits:

- Ieremenko: $318,987,117[14]

---

[13] Moreover, awarding treble penalties here ensures consistency with penalties against other defendants who defaulted in this case and Zavodchikov (the related case). See ECF No. 393-94; Zavodchikov, No. 16-845 (D.N.J.), ECF Nos. 50-51, 56-57.

[14] Under Section 21A of the Exchange Act, a defendant's penalties should take into account the profits generated by traders who the defendant tipped. See SEC v. Rajaratnam, 918 F.3d 36, 43-44 (2d Cir. 2019); SEC v. Gupta, No. 11-7566, 2013 WL 3784138, at *2 & n.4 (S.D.N.Y. July 17, 2013), aff'd 569 F. App'x 45 (2d Cir. 2014). For this reason, Ieremenko is being held accountable for the profits generated by the Defendant Traders who benefitted directly from the information stolen from the Hackers. That said, the Commission has excluded from Ieremenko's penalty

- Pavel: $33,028,806[15]

**IT IS** on this 23rd day of June, 2021;

**ORDERED** that the Commission's Motion for Default Judgment, ECF No. 430, is **GRANTED**; and it is further

**ORDERED** that judgment is entered against the Defaulting Defendants in the following amounts:

a) Defendant Aleksander Ieremenko is liable for a monetary penalty of $318,987,117;

b) Defendant Pavel Dubovoy is liable for a monetary penalty of $33,028,806; and it is further

**ORDERED** that Defaulting Defendants may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request, or by payment made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm, or by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

---

calculation profits generated from defendants who were dismissed from this action and profits from those defendants named in the related action, Zavodchikov.

[15] Pavel's penalty totals three times the gross profits made by Pavel, Arkadiy, and Igor. See Canjels Decl. ¶ 13 and Tables 2 and 3.F. Igor and Arkadiy consented to judgments holding them jointly and severally liable for disgorgement in excess of $11 million for their conduct in the scheme, ECF Nos. 412, 417, but Pavel has yet to be held accountable for his conduct.

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court, defendant's name as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment; and it is further

**ORDERED** that the Defaulting Defendants shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action, and that by making this payment, the Defaulting Defendants relinquish all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to the Defaulting Defendants; and it is further

**ORDERED** that the Commission's request for injunctive relief is **GRANTED**, and the Defaulting Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are enjoined from future violations of Section 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATE DISTRICT JUDGE**