UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 15-6076 (MAH) |
| Plaintiff, | |
| v. | |
| ARKADIY DUBOVOY, et al., | ORDER |
| Defendants. | |

**THIS MATTER** having come before the Court on Plaintiff Securities and Exchange Commission's ("the Commission") Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b) against Defendant Ivan Turchynov ("Turchynov"), Mot. for Default J., Dec. 23, 2021, D.E. 447;

and it appearing that this action arises out of Turchynov's participation in an international hacking and trading securities fraud scheme perpetrated against the United States securities markets that involved Ukrainian computer hackers stealing corporate press releases from American newswire services before they were published, Am. Compl., Aug. 23, 2015, D.E. 28, at ¶¶ 1-10;

and it appearing that Turchynov, a computer hacker who resides in Ukraine, in concert with Defendant Oleksander Ieremenko stole more than 100,000 unpublished press releases containing quarterly and annual earnings data for publicly-traded companies from multiple newswire services' computer systems, *id.* at ¶¶ 1-2, 15-18, 71-76;

and it appearing that Turchynov and Ieremenko transmitted this data to several securities traders involved in the scheme, who then used the material nonpublic information they received and generated more than $30 million in gross ill-gotten gains, *id.* at ¶¶ 3, 5-6, 92-100;

and it appearing that on August 10, 2015, the Commission initiated this action by filing the Complaint, Compl., Aug. 10, 2015, D.E. 1, which the Commission amended on August 23, 2015, Am. Compl., D.E. 28;

and it appearing that on August 10, 2015, the Honorable Madeline Cox Arleo, United States District Judge granted the Commission's motion for a temporary restraining order ("TRO"), which froze Turchynov's assets and granted other relief, D.E. 12, and revised that TRO on August 11, 2015, D.E. 13;

and it appearing that in December 2019, Turchynov was served with process via alternative means approved by the Court, *see* D.E.s 392, 395, 400;

and it appearing that the Commission requested that the Clerk of Court enter Turchynov's default on March 31, 2020, D.E. 401, and the Clerk of Court did so that same day;

and it appearing that counsel for Turchynov filed a notice of appearance in this matter on August 19, 2020, D.E. 426, but Turchynov has failed to answer, plead, or otherwise respond to the Amended Complaint;

and it appearing that on December 23, 2021, the Commission filed the instant motion seeking judgment against Turchynov, D.E. 447;

and it appearing that the Commission effected proper service of the instant motion for default judgment, *see* Certificate of Service, Dec. 23, 2021, D.E. 447-3;

and it appearing that Turchynov has not opposed or otherwise responded to the instant motion;

and it being established that default judgment may only be entered against a properly-served defendant, *see E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC*, 19 F. Supp. 3d 560, 567 (D.N.J. 2014);

and the docket reflecting that Turchynov was properly served with service of process, *see* D.E. 392 (approving service via email and periodic publication in the New York Times International Edition); D.E. 395 (Declaration of John Donnelly Regarding Service of Process); and D.E. 400 (Declaration of John Donnelly Regarding Service by Publication);

and the Court being required to determine whether it has jurisdiction over the action and the parties before entering a default judgment, *see Animal Sci. Prods., Inc. v. China Nat'l Metals & Mins. Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 849 (D.N.J. 2008);

and it appearing that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Amended Complaint raises questions of federal securities law under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77a *et seq.*, and the Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et seq.*, Am. Compl., D.E. 28, at ¶¶ 226-38;

and it appearing that the Court has personal jurisdiction[1] over Turchynov, as Turchynov has purposefully availed himself of the privileges of conducting activities within the United States by: (1) hacking multiple newswire services and stealing unpublished press releases related to companies whose securities are traded on the American Stock Exchange, *id.* at ¶¶ 53-55, 71-

---

[1] The Securities and Exchange Acts authorize nationwide service of process and permit the exercise of personal jurisdiction to the full extent of the Due Process Clause of the Fifth Amendment. *See* 15 U.S.C. §§ 77v(a), 78aa; *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002). When a federal statute authorizes nationwide service of process, personal jurisdiction may be established when a defendant has sufficient minimum contacts with the United States as a whole. *See Pinker*, 292 F.3d at 371-73; *see also SEC v. One or More Unknown Traders in the Sec. of Fortress Inv. Grp., LLC*, Civ. No. 17-01287, 2018 WL 4676043, at *4 (D.N.J. Sept. 27, 2018). Under the minimum contacts analysis, the Court considers whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

75, and distributing those press releases to traders located in the United States, *id.* at ¶¶ 3-5, 21-23, 25-28; and (2) communicating extensively with traders in the United States throughout the scheme, *see id.* at ¶¶ 87-90, who then used the stolen information to trade in U.S. securities on U.S. exchanges, *id.* at ¶¶ 1-11, 21-23;

and, before entering a default judgment, the Court also being required to determine whether the Amended Complaint sufficiently pleads a cause of action and whether the Commission has proven damages, *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536, 538 (D.N.J. 2008);[2]

and it appearing that the Commission's Amended Complaint raises two claims for relief against Turchynov; specifically, (1) violations of Section 17(a) of the Securities Act for perpetrating a scheme to defraud; and (2) violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder for perpetrating a scheme to defraud, D.E. 28, at pp. 58-59;

and it appearing that to state a claim under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the Commission must show that (1) Turchynov made material misrepresentations or omissions, or employed a device, scheme, or artifice to defraud; (2) with scienter; (3) in connection with the offer, purchase, and/or sale of a security; and (4) in connection with interstate commerce, *SEC v. Desai*, 145 F. Supp. 3d 329, 335 (D.N.J. 2015) (citations omitted);

and it appearing that Turchynov (1) employed a scheme to defraud in connection with the purchase or sale of U.S. securities by stealing material nonpublic information, Am. Compl., D.E. 28, at ¶¶ 2, 71-74, and assisting in the trade of this information, *see id.* at ¶¶ 75, 83, 86-90, which

---

[2] The Court "accept[s] as true the well-pleaded factual allegations of the Complaint," but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages." *Gordashevsky*, 558 F. Supp. 2d at 535.

4

resulted in over $100 million of unlawful profit, *id.* at ¶¶ 1, 9; (2) had a clear intent to defraud, which the Court infers from the alleged actions Turchynov took in furtherance of the scheme, *see Valicenti Advisory Servs., Inc. v. SEC*, 198 F.3d 62, 65 (2d Cir. 1999) (explaining that scienter can be inferred from circumstantial evidence); *see also* Am. Compl., D.E. 28, at ¶¶ 1-10 (alleging Turchynov hacked into newswire services for the purpose of stealing confidential earnings information); *id.* at ¶ 18 (alleging Turchynov "used multiple email accounts and online 'handles' in carrying out and communicating about the scheme"); *id.* at ¶ 73 (alleging Turchynov used various deceptive tactics to hack into newswire services, including, but not limited to, "employing stolen username/password information of authorized users to pose as authorized users"); (3) the fraudulent scheme resulted in the trade of securities, *id.* at ¶¶ 87-90, 92-100; and (4) the fraudulent scheme occurred over international and interstate boundaries, *see, e.g.*, *id.* at ¶¶ 15-16, 23;

and it appearing that the Amended Complaint therefore sufficiently pleads liability as to Turchynov;

and it appearing that before entering default judgment, the Court must consider: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to a culpable conduct," *Walker v. Pennsylvania*, 580 F. App'x 75, 78 (3d Cir. 2014) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000));

and it appearing that the Commission will suffer prejudice absent an entry of default judgment, as the Commission will have no other means of obtaining relief;

and it appearing that, accepting the allegations in the Amended Complaint as true, Turchynov does not have a meritorious defense, *see HICA Educ. Loan Corp. v. Surikov*, Civ. No.

14-1045, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015) (weighing this factor in plaintiff's favor where defendant failed to respond with "evidence or facts containing any information that could provide the basis for a meritorious defense");

and it appearing that Turchynov's failure to respond to this lawsuit, in light of the allegations of substantial financial injuries, is sufficient to infer culpability, *see Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (holding defendant's failure to respond to communications from plaintiff and court supported finding of culpability);

and it appearing that although the Court accepts the facts pled in the Amended Complaint "as true for the purpose of determining liability, the plaintiff must prove damages," *Moroccanoil, Inc. v. JMG Freight Grp., LLC*, Civ. No. 14-5608, 2015 WL 6673839, at *1-2 (D.N.J. Oct. 30, 2015); *see also DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005) (noting "while the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment, legal issues remain subject to its adjudication");

and it appearing that the Commission has requested that the Court (1) permanently enjoin Turchynov from future securities law violations; and (2) order Turchynov to pay a civil monetary penalty of $318,987,117, the equivalent of three times the gross profits generated by the fraud scheme, *see* D.E. 447; *see also* D.E. 447-1, at p. 20[3];

and it appearing that the Court is "empowered to issue injunctions commanding compliance with the [federal securities] laws and [the Commission's] regulations promulgated thereunder," *SEC v. Savoy Indus., Inc.*, 665 F.2d 1310, 1317 n.54 (D.C. Cir. 1981);

---

[3] The Commission has withdrawn its claims against Turchynov for disgorgement and prejudgment interest. D.E. 447-1, at p. 20. Moreover, the Commission has excluded from its penalty calculation profits generated by two defendants who were dismissed from this action without prejudice. *Id.* at p. 24 n.9.

and, in determining whether an injunction is appropriate, the Court considering (1) the degree of the defendant's scienter; (2) whether the infraction was isolated or recurring in nature; (3) the defendant's recognition of his or her wrongful conduct; (4) the sincerity of the defendant's assurances against future violations; and (5) the likelihood that future violations may occur based on the defendant's professional occupation, *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980);

and the Court determining that an injunction is appropriate here because: (1) as discussed above, Turchynov is alleged to have acted intentionally in participating in and carrying out the scheme to defraud the U.S. securities markets; (2) the scheme was recurring in nature, involving millions of dollars in securities trading over nearly five years, *see* Am. Compl., D.E. 28, at ¶¶ 1-2; *see also* Declaration of Dr. Eugene P. Canjels, D.E. 448, at ¶ 12 and Tables 1-3 (explaining that Turchynov and Ieremenko stole over 100,000 press releases and thereby generated over $100 million in illegal gains); (3) by failing to appear in this action, Turchynov has neither rebutted the allegations of the Commission, nor shown adherence to United States securities laws, nor demonstrated contrition for his unlawful acts; (4) similarly, by failing to appear, Turchynov has offered no assurance that he has previously acted lawfully, or that he will act lawfully in the future; and (5) Turchynov is allegedly a professional computer hacker, and therefore likely to engage in future violations, *see* Am. Compl., D.E. 28, at ¶¶ 2, 16;

and it appearing that Section 21A of the Exchange Act permits the Commission to bring an action against any person who violates the Exchange Act and to seek a civil penalty that "shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale, or communication," 15 U.S.C. §§ 78u-1(a)(1)-(2);

and it appearing that Section 21 of the Exchange Act applies because Turchynov provided his co-conspirators material nonpublic information – specifically, the nonpublic press releases stolen from the newswire services – with which the trader defendants generated over $100 million in profits, Am. Compl., D.E. 28, at ¶¶ 1-10, 67-76;[4]

and it appearing that, in setting the penalty amount, the Court considers "(1) the egregiousness of the defendant's violations; (2) the isolated or recurrent nature of the violations; (3) the degree of [the defendant's] scienter; (4) the amount of illegal profits; and (5) the deterrent effect of the penalty in light of [the] defendant's net worth," *SEC v. Johnson*, Civ. No. 02-5490, 2004 WL 5561799, at *5 (D.N.J. Aug. 27, 2004);

and it appearing that although the Commission has not provided any evidence of Turchynov's net worth, the first four factors weigh in favor of a treble penalty in this case, given the breadth and length of the fraudulent scheme set forth in the Amended Complaint and Commission's filings in support of default judgment; Turchynov's scienter as discussed above; Turchynov's failure to respond or accept responsibility in this matter; and the amount of illegal profits, *see* Am. Compl., D.E. 28, at ¶¶ 1-10; Canjels Decl., D.E. 448, at ¶ 12 and Tables 1-3;

and the Court holding that awarding treble penalties against Turchynov ensures consistency with the penalties imposed against other defendants who have defaulted in this matter, *see, e.g.*, D.E. 438, at pp. 10-11 (entering judgment and holding Ieremenko liable for a monetary penalty of $318,987,117); *see also* D.E.s 393-94, and in a related case, *see SEC v. Zavodchikov*, Civ. No. 16-845 (D.N.J), D.E.s 50-51, 56-57;

---

[4] Under Section 21A of the Exchange Act, a defendant's penalties should take into account the profits generated by traders who the defendant tipped. *See SEC v. Rajaratnam*, 918 F.3d 36, 43-44 (2d Cir. 2019); *SEC v. Gupta*, Civ. No. 11-7566, 2013 WL 3784138, at *2 n.4 (S.D.N.Y. July 17, 2013), *aff'd* 569 F. App'x 45 (2d Cir. 2014). Turchynov is therefore held accountable for the profits generated by the trader-defendants who benefited directly from the information stolen by Turchynov. *See, e.g.*, Am. Compl., D.E. 28, at ¶¶ 67-76, 78-86.

and it appearing that Turchynov has not contested the Commission's calculations, despite having been served with the application for default judgment more than two months ago;

and the Court finding, for the reasons set forth above, that it is appropriate to impose a penalty of $318,987,117, the equivalent of three times the trader-defendants' gross profits;

**IT IS on this 28th day of February 2022**,

**ORDERED** that the Commission's Motion for Default Judgment, D.E. 447, is **GRANTED**; and it is further

**ORDERED** that judgment is entered against Defendant Ivan Turchynov.  Defendant Ivan Turchynov is liable for a monetary penalty of $318,987,117; and it is further

**ORDERED** that Defendant Ivan Turchynov may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request, or by payment made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm, or by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to:

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Turchynov's name as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment; and it is further

**ORDERED** that Turchynov shall simultaneously submit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action, and that by

making this payment, Turchynov relinquishes all legal and equitable right, title and interest in such funds and no part of the funds shall be returned to Turchynov; and it is further

**ORDERED** that the Commission's request for injunctive relief is **GRANTED** and Turchynov, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise are enjoined from future violations of Section 17(a) of the Securities Act, 15 U.S.C. § 17q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

<u>*Michael A. Hammer*</u>
**Hon. Michael A. Hammer,**
**United States Magistrate Judge**